Argued November 20, decided December 10, 1912.

## THURBER v. McMINNVILLE.

(128 Pac. 43.)

**Taxation—Injunction—Void Levy.**

1. Where a tax levy is void because without the territorial limits of the municipality levying it, it may be enjoined.

**Constitutional Law—Construction of Constitution—Grants of Legislative Power.**

2. Under Article XI, Section 2 of the constitution, which grants certain sovereign powers of the State to local subdivisions and vests certain legislative powers in such municipalities, must be strictly construed as a limitation on the power of the legislature.

**Municipal Corporations—Annexation of Territory—Procedure—Constitutional and Statutory Provisions.**

3. While under Article XI, Section 2 of the constitution, which provides that the legal voters of every city and town may

enact and amend their municipal charters, subject to the constitution and criminal laws of the State, the people of a particular locality may by vote adopt a charter, and under statutory provisions enact new charters or amend those already in existence, a municipality has no power beyond its boundaries, and an election to extend its territory to include new territory without the consent of the citizens of such territory is not warranted; the proper procedure in such case being under Section 3209, L. O. L., providing for separate elections by the voters within the municipality and those in the territory sought to be annexed, and annexation being authorized upon the securing of a majority of the voters in each locality.

**Municipal Corporations—Annexation of Territory—Elections—Notice—Sufficiency.**

4. Notice of a special election by a municipality to vote on the question of the acquisition of territory thereto, which neither described the property to be acquired, nor referred to any petition on file where such information might be obtained, was insufficient to validate the election.

From Yamhill: Percy R. Kelly, Judge.

Statement by Mr. Justice McBride.

This is a suit by M. Thurber to enjoin the listing of plaintiff's property by the municipal authorities of the city of McMinnville for the purposes of municipal taxation within said city. On the 25th day of January, 1910, the common council of McMinnville passed an ordinance, pursuant to a petition filed with its recorder, signed by 171 of the legal voters residing within the city, calling a special election for Monday, the 4th day of April, 1910, to vote on the question of amending Section 2 of the city's charter, relative to extending the boundaries of the city. The ordinance attempted to empower the city recorder, marshal, and other officers of the city to do and perform every act necessary to be done prior to the date of such election, including the giving of notice of such election, preparing ballots and supplies. On the 2d day of February, 1910, an initiative petition was presented to the common council, asking an amendment changing

the boundaries of the city, thereby very much enlarging the same, and taking in all of the property, real and personal, of the plaintiff. On receipt of the petition the common council ordained that an amendment conforming to the petition be initiated and submitted to the voters of the city of McMinnville for their adoption or rejection. On the 19th day of March, 1910, three notices of a special election, to be held April 4, 1910, to vote on the proposed amendments, were posted; but all of the notices were posted within the city, and none were posted within the boundaries of the new territory proposed to be brought within the corporate limits. Two amendments enlarging the boundaries were proposed. The following is the form of the notice given, omitting matters not material to the contention here:

### "NOTICE OF SPECIAL ELECTION.

"Notice is hereby given that a special election will be held in the city of McMinnville, Oregon, on the 4th day of April, 1910, for the purpose of voting upon the adoption or rejection of the following proposed amendments to the charter of the city of McMinnville, Oregon, proposed by initiative petition:

" 'For amending Section 72 of the charter of the city of McMinnville, in Yamhill County, State of Oregon, and authorizing the contracting of a bonded indebtedness not to exceed three thousand dollars, for park purposes, and creating a park commission.'

" 'For amending Section 2 of the charter of the city of McMinnville, in Yamhill County, State of Oregon, and to extend the boundaries of said city,' and

" 'For amending Section 2 of the charter of the city of McMinnville, in Yamhill County, Oregon, and to extend the boundaries of said city, as per the petition of residents of the proposed annexed territory.' "

The special election was held as called, but no polling places were opened within the proposed new territory to be annexed, nor were the legal voters in such territory permitted or allowed to vote on the question of annex-

ation.   On the 6th day of April, 1910, the common council declared the result of such election, and the mayor issued a proclamation proclaiming the annexation of the new territory.   Thereafter the assessor proceeded to list plaintiff's property, real and personal, for taxation, as being within the city of McMinnville.   Plaintiff commenced this suit and asks that the defendants be enjoined from listing plaintiff's property for taxation as being within the city of McMinnville for city tax.   No complaint is made against listing the property for all other taxes except those of the city of McMinnville.

To the amended complaint defendants interposed a demurrer on the grounds: (1) That the complaint does not state facts sufficient to constitute a cause of suit; (2) that this court, as a court of equity, has no jurisdiction of the subject-matter of this suit; and (3) that there is a defect of parties herein in that the State of Oregon is not made a party plaintiff.   The demurrer was sustained and the suit dismissed.   The plaintiff appeals.

REVERSED : DECREE RENDERED.

For appellant there was a brief and oral arguments by *Mr. George G. Bingham* and *Mr. Vine W. Pearce.*

For respondent there was a brief and oral arguments by *Mr. Roswell L. Conner* and *Mr. William M. Ramsey.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The question raised by respondent as to the jurisdiction of a court of equity to enjoin the collection of a tax levied by a municipality beyond its territorial limits is settled in favor of appellant by the case of *Leach* v. *Port of Tillamook,* 62 Or. 345 (124 Pac. 642).

2. In this case there is presented the important question as to the full scope of Article XI, Section 2 of the constitution, as amended in 1910.   The amended section reads as follows:

"Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by

special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon, and the exclusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the State of Oregon."

This being a grant of the sovereign power of the State to the particular local subdivisions named, and being a limitation on the power of the legislature, it should be strictly construed. Cooley, Const. Lim., pp. 270, 271.

3. Under its provisions we take it that the people of a particular locality where election machinery is provided for that purpose may, by vote, adopt a charter and, under such provisions as are now or may hereafter be provided by law, may enact new charters or amend those already in existence without interference by the State legislature; but that it was ever intended that a municipal corporation already in existence should have authority to extend its boundaries so as to include new territory without the consent of the citizens of such territory is so repugnant to our ideas of fairness and justice that we cannot assent to the proposition. To do so would be to say that an enterprising municipal corporation containing, say, 500 voters, might annex adjoining territory containing a thousand voters, and subject them to the burdens of municipal taxation without their consent and against their will. We are of the opinion that the true intent of the amendment above quoted was to give to cities and towns the authority to enact and amend charters affecting property and other rights within the boundaries of such cities and towns, and that, so far as legislation outside of these boundaries

is concerned, they must find it elsewhere than in this amendment. Inside their boundaries, and in relation to matters purely local, they are, as regards regulation by the State legislature, supreme; beyond these boundaries they are invested with no power except that which the legislature may see fit to grant them in common with all other cities, and under like circumstances. This is not in conflict with the case of *City of McMinnville* v. *Howenstine,* 56 Or. 451 (109 Pac. 81), when properly understood. In that case the city was attempting to exercise the right of eminent domain by condemning a right of way for a pipe line outside the city limits, and had passed an ordinance authorizing it to do so. Long before the passage of this ordinance the legislature had passed a law authorizing cities to do the same thing, so that the passage of the city ordinance was entirely unnecessary, except, perhaps, in so far as it authorized the council to set the city machinery in motion to bring the action to condemn under the State statute. Justice KING, who rendered the principal opinion, intimated that the constitutional amendment, authorizing cities and towns to amend their own charters, was broad enough to authorize them to pass an ordinance prescribing a method for the condemnation of land for such purposes outside the city limits. Justice SLATER, concurring in the result reached in that opinion, dissented from the reasoning of Justice KING, and placed the authority of the city to condemn upon the act of February 21, 1891, Sess. Laws 1891, p. 145 (Section 6874, L. O. L.) The other members of the court concurred generally in the result arrived at in these opinions; it being clear that, if either correctly stated the law, the city had the right to condemn.

A majority of this court has never held that a city has the authority, by virtue of the constitutional amendment last alluded to, to condemn lands outside of the city limits. On the contrary, we hold that, without express

legislative authority granted to all cities of the same class, it has neither power to condemn land for municipal purposes, nor any other extra territorial legislative authority whatever. In the absence of such permission, its attempted legislation outside its limits is as powerless to affect outlying territory as an ordinance passed by the city council of Boston would be to regulate the affairs of the town of McMinnville. We take this to be the true intent and meaning of the initiative and referendum amendments to our constitution (Article IV, Section 1, 1a), which latter section, among other things, provides that:

"The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws," etc.

The word "district" is comprehensive; it may include subdivisions municipal in their character, or otherwise, and it is in the power of the legislature to create or abolish such nonmunicipal districts as it may judge expedient. The legislature, by Section 3209, L. O. L. (Sess. Laws 1893, p. 120), provided a plain, easy method by which an incorporated city could acquire new territory. By virtue of this act, which has not been repealed, and which does not conflict with the sections of the constitution thereafter adopted, it was provided that the question of acquiring such territory might, by the action of the city council of the municipality, be submitted to the voters within and without the municipality, voting separately; and, if a majority of each locality voted in favor of annexation, the change in boundary should be made. By this act the territory to be annexed became a "district" for the purpose of voting on the question of annexation, and, as such, was entitled to be

consulted and to have the vote of its inhabitants recorded on the question. It may be that the subsequent amendment of Article XI, Section 2, of the constitution, is broad enough to permit some deviation in detail from the method prescribed in Section 3209, L. O. L., for taking and recording the vote; but the right of the people of the district or territory sought to be annexed to be permitted to vote upon the question under some method is a constitutional one that cannot be taken away.

4. This, in effect, disposes of the case; but, as the proceeding to annex the territory in question is likely to be again attempted, we deem it proper to say that in our opinion the notices given of the special election were insufficient. They do not describe the property to be acquired, nor refer to any petition on file where such information can be obtained. Had the notices, in addition to what is stated, added the words "in accordance with a petition now on file in the office of the recorder of the city of McMinnville," it would have rendered the notice certain, as in such case the voter would have been directed to the place where the document was on file, from which document he could obtain specific information. Such a notice has been held sufficient by this court in several cases, although, for the sake of certainty, it is, perhaps, better in many instances to include a complete description in the notice. In matters of this magnitude the small sum expended in the publication of a sufficient and complete notice is money well spent. In *Jones* v. *Salem,* 63 Or. 126 (123 Pac. 1096), a notice of a proposed sewer improvement referred, for a description of the boundaries, to a certain map on file in the office of the city recorder. Unfortunately the map did not show the boundaries, and, no jurisdiction having been obtained by the defective notice, the proceedings were held void. In that case $50 expended in printing a complete notice of the proposed improvement would have

Sig. 14

prevented a debt of $160,000 being saddled upon the general taxpayers of the city. In the case at bar, it would seem sufficient to refer to the petition on file, stating where it could be found; but a word of caution to cities as to the manner of giving notice of proposed extension of boundaries, proposed improvements, and the like, is not deemed inappropriate.

The demurrer is overruled, and the plaintiff will have a decree as prayed for.

REVERSED: DECREE RENDERED.