Argued May 10, reversed July 25, 1962

STATE ex rel HEINIG v. THE CITY OF
MILWAUKIE et al

373 P. 2d 680

*John O. Sheldahl,* Oregon City, argued the cause and submitted briefs for appellants.

*David H. Breuer,* Portland, argued the cause and submitted a brief for respondents.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

O'CONNELL, J.

This is a mandamus proceeding, commenced in the court below, through which plaintiff seeks to compel the city of Milwaukie and the members of the city council to establish a civil service commission in accordance with ORS 242.702 to 242.990 which provides for a civil service system for firemen.

The defendants appeal from a judgment granting a peremptory writ of mandamus commanding the city council to establish a civil service commission as prayed for in plaintiff's petition for the alternative writ of mandamus.

Defendant city operates under a home rule charter. The city has made no provision for the establishment of a civil service system covering the employees of its

fire department. Provisions relating to the employment and discharge of city personnel including firemen are, however, found in the city charter.[1] ORS 242.702 to 242.990 requires the creation of a civil service system for city firemen.[2]

The defendants contend that matters relating to the operation of the city fire department, including the employment and discharge of firemen, are matters of purely local municipal concern and, therefore, not subject to regulation or control by the legislative

---

[1] "CHAPTER II

"* * * WHERE POWERS VESTED. Except as otherwise provided in this Chapter, all powers of the City shall be vested in the Council, * * * * *

"* * * OTHER CITY OFFICERS AND EMPLOYEES. The city manager shall appoint a recorder, a treasurer, an attorney, a chief of police, a fire chief, and such other officers and employees as the council deems necessary, each of whom shall hold office during his pleasure. The council may by resolution require any officer to fill and perform the duties of two or more offices."

* * * * *

"CHAPTER VI

* * * * *

"Section 24. MANAGER.

* * * * *

"(c) Powers and Duties.

* * * * *

"(3) shall appoint all city officers and employees and remove them at pleasure, and have general supervision and control over them and their work, with power to transfer an employee from one department to another and shall exercise supervision and control over the departments to the end of obtaining the utmost efficiency in each of said departments, provided that he shall have no control over the council and the judicial activities of the municipal judge; * * * ."

[2] The principal section is ORS 242.706 (1) which provides:

"(1) There hereby is created in each political subdivision subject to ORS 242.702 to 242.824 a civil service commission composed of three members appointed or confirmed by the governing body of the political subdivision according to its charter, ordinances or regulations. If the political subdivision has an elected fire commission, the members of the civil service commission shall be appointed by the fire commission subject to confirmation by the governing body of the political subdivision."

assembly. Defendants, relying upon Article XI, § 2 and Article IV, § 1a as the source of this alleged exclusive municipal authority,[3] contend that ORS 242.702 cannot constitutionally be applied to the defendant city.[4]

The two principal questions presented in this appeal are: (1) does the legislative assembly have the constitutional authority to enact a general law applicable to all cities when the enactment relates to a matter of local concern and in which there is no need for general regulation outside city boundaries; (2) is the establishment of a civil service system for city firemen a local matter or is it a matter of state wide concern? These precise questions have been presented

---

[3] Article XI, § 2 provides in part:

"* * * The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon, * * * but such municipality shall within its limits be subject to the provisions of the local option law of the State of Oregon."

Article IV, § 1a provides in part:

"The referendum may be demanded by the people against one or more items, sections or parts of any act of the legislative assembly in the same manner in which such power may be exercised against a complete act. The filing of a referendum petition against one or more items, sections or parts of an act shall not delay the remainder of that act from becoming operative. The initiative and referendum powers reserved to the people by this Constitution, are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than 10 per cent of the legal voters may be required to order the referendum, nor more than 15 per cent to propose any measure, by the initiative, in any city or town."

[4] Defendants also assert other constitutional grounds but we need not consider them inasmuch as we regard Article XI, § 2 as controlling.

to this court in previous cases. Unfortunately, not all of these cases are in harmony with each other.[5]

In some of our cases the position is taken that if the statute applies to all cities (or to cities constitutionally classified) it is valid even though the statute deals with a matter of local concern only.[6] The contrary view is expressed in other cases.[7] The most recent pronouncement on the question is found in *Schmidt v. City of Cornelius*, 211 Or 505, 316 P2d 511 (1957). In that case a statute purported to empower owners of tracts of land to effect a disconnection of the tracts from the city under prescribed procedure. After reaffirming the rule stated in *In Re Application of Boalt*, 123 Or 1, 17, 260 P 1004 (1927) that the legislature may enact a general law "governing the exercise of municipal authority in matters not strictly local or municipal, but pertaining in part to the general welfare of the state, or the exercise of sovereign authority," the court said:

> "Whether the legislature may ever by a general law operate directly upon all city charters in matters which concern alone the inhabitants of the respective cities and which relate to purely local affairs germane to the purposes for which the city was incorporated need not be again decided here.

[5] This disharmony in the Oregon cases up to 1939 is discussed in Ronchetto and Woodmansee, Home Rule in Oregon, 18 Or L Rev 216 (1939).

[6] Burton v. Gibbons, 148 Or 370, 36 P2d 786 (1934); Pederson v. Portland, 144 Or 437, 24 P2d 1031 (1933); Rose v. Port of Portland, 82 Or 541, 162 P 498 (1917); Churchill v. Grants Pass, 70 Or 283, 141 P 164 (1914); City of McMinnville v. Howenstine, 56 Or 451, 109 P 81, AC 1912C 193 (1910); Straw v. Harris, 54 Or 424, 103 P 777 (1909).

[7] City of Portland v. Welch, 154 Or 286, 59 P2d 228, 106 ALR 1188 (1936); In Re Application of Boalt, 123 Or 1, 260 P 1004 (1927); Pearce v. Roseburg, 77 Or 195, 150 P 855 (1915); Kalich v. Knapp, 73 Or 558, 142 P 594, 145 P 22, AC 1916E 1051 (1914); Branch v. Albee, 71 Or 188, 142 P 598 (1914).

We merely take note of the apparent conflict between the dictum in *Burton v. Gibbons* (148 Or at 381) and the clear statement supra from *City of Portland v. Welch.*

"It is sufficient for the disposal of the pending question to hold that since the legislature could not pass a special law amending the charter of the city of Cornelius and excluding territory from its boundaries, 'Hence, what the legislature can not do directly it can not do through indirection.' *City of Portland v. Welch,* 154 Or at 295." *Schmidt v. City of Cornelius,* 211 Or at 529.[9]

The court then said that the legislature could not effect an amendment to a city charter by empowering an individual to initiate judicial proceedings which, if successful, would amend the charter, for, it was said, "To hold otherwise would be to deprive the city of its admitted power to change its own boundaries by its own procedure, and would in practical effect violate the mandate of Constitution Article I, § 21,

---

[9] The dictum in Burton v. Gibbons, 148 Or 370, 379, 36 P2d 786, 789 (1934) referred to in the quotation above was as follows:

"* * * [T]he power of the legislature to enact a general law applicable alike to all cities is paramount and supreme over any conflicting charter provision or ordinance of any municipality, city or town."

It is not clear from this statement whether the "general law" to be valid must pertain to a matter of general concern to the people of the state. In City of Portland v. Welch, 154 Or 286, 59 P2d 228, 106 ALR 1188 (1936), also referred to in the quotation from Schmidt v. City of Cornelius, supra, it is made clear that the statute must deal with a matter not solely of local concern to the various cities of the state:

"While a general law supersedes a municipal charter or ordinance in conflict therewith, it should be borne in mind that the subject matter of the general legislative enactment must pertain to those things of general concern to the people of the state. A law general in form can not, under the constitution, deprive cities of the right to legislate on purely local affairs germane to the purposes for which the city was incorporated." 154 Or at 296, 59 P2d at 232.

which provides that no law shall be passed 'the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution.' "[9]

■ Since the foregoing language may leave some doubt as to the rationale of the Schmidt case we now expressly hold that the legislative assembly does not have the authority to enact a law relating to city government even though it is of general applicability to all cities in the state unless the subject matter of the enactment is of general concern to the state as a whole, that is to say that it is a matter of more than local concern to each of the municipalities purported to be regulated by the enactment. Borrowing the language from *Branch v. Albee*, 71 Or 188, 193, 142 P 598, 599 (1914), we hold that the people of a city are not "subject to the will of the legislature in the management of purely local municipal business in which the state at large is not interested, and which is not of any interest to any outside the local municipality."

■ An enactment is not of state-wide interest simply because the legislature decides that each of the cities in the state should be governed by the same law. In the appropriate case the need for uniformity in the operation of the law may be a sufficient basis for legislative pre-emption. But uniformity in itself is no virtue, and a municipality is entitled to shape its local law as it sees fit if there is no discernible pervading state interest involved.

We recognize that the constitutional provisions referred to above are susceptible to a narrower construction,[10] but the broader construction adopted in

---

[9] Schmidt v. City of Cornelius, 211 Or 505, 529-530, 316 P2d 511, 523 (1957).

[10] See, for example, Rose v. Port of Portland, 82 Or 541, 545, 162 P 498 (1917).

*City of Portland v. Welch,* 154 Or 286, 59 P2d 228, 106 ALR 1188 (1936) apparently endorsed by *Schmidt v. City of Cornelius,* supra, is supportable, and the matter having finally come to resolution in those cases after a long period of vacillation and confusion in this important area of the law, we believe that it is desirable to reaffirm the position taken in the latter cases.

We next consider the question of whether the statutes relied upon by plaintiffs deal with a matter of local or of more general concern. Here again we are met with confusion and conflict in the cases. As has been observed, "The courts have, generally speaking, been unable to devise any objective test whereby it can be determined with certainty what matters come within the term 'municipal affairs,' for the term has no fixed quantity, fluctuates with every change in the conditions upon which it operates, and has of necessity been determined by a slow process of judicial inclusion and exclusion."[11]

■■ Purely upon the basis of precedent our own decision in *Branch v. Albee,* 71 Or 188, 142 P 598 (1914) holding that the pensioning of city police is a municipal matter would, in our opinion, be conclusive in the present case.[12] In relation to the question before us

---

[11] Rhyne, Municipal Law p. 64 (1957).

[12] In fact, the activities of a city fire department are more localized than those of a police department. This is recognized in 16 McQuillin, Municipal Corporations (3d ed 1950) p. 507-508:
"* * * The reason for distinguishing between the fire and police departments, by holding the former not subject to legislative control, is that the latter, from the nature of their position, act for the whole state insofar as their jurisdictions extend, and deal with matters with which the state as a whole is concerned, whereas the former is distinctively a matter which concerns the inhabitants of the city or town as an organized community apart from the people of the state at large, and consequently it is peculiarly within the field of municipal activity and local self-government."

we can see no substantial difference between the establishment of a pension system for city police and the establishment of a civil service system for city firemen. But even if we were to consider the question as res integra we would still hold that the manner of employing and discharging the personnel of a municipal fire department is a matter of local rather than state concern. To be sure, it could be shown that the manner of dealing with personnel of local fire departments may have some relation to the affairs of the state outside of the city boundary—in a sense all events in life are related—but the question requiring our answer is whether the extramural effect is substantial or insignificant. "The real test is not whether the state or the city has an interest in the matter, for usually they both have, but whether the state's interest or that of the city is paramount."⑧

The solution cannot be arrived at by a recitation of the definitions of "local" or "municipal" affairs.⑨ The question is, of course, one of degree, and the allocation of power between legislature and municipality must be made by us in accordance with the purpose, as we understand it, of the constitutional amendments which vested in the cities a part and an exclusive part of the power to legislate free from control of the state legislative assembly.

That purpose, stated broadly, was to make operative the concept that the closer those who make and execute the laws are to the citizens they represent the better are those citizens represented and gov-

---

⑧ McDonald, American City Government and Administration p. 79 (3d ed 1941).

⑨ See Cohn, Municipal Revenue Powers in the Context of Constitutional Home Rule, 51 N W U L Rev 27 at 30-31 (1956).

erned in accordance with democratic ideals.[9] That objective would not be served if we should decide that the legislative assembly pre-empts the field each time it makes a statute applicable to all cities alike.

The statement of this broad objective of the home rule amendments does not, of course, decide the case before us. It serves only as a basis for emphasis in making the choice between the city and the state in the allocation of sovereignty upon more specific grounds.

---

[9] "* * * One of the familiar instrumental values, associated with the basic value of human liberty, is the idea that decision-making should be at a level close to the people and, concomitantly, that public servants should be close to their masters. This is thought to serve the cause of liberty by protecting against the arbitrary exercise of governmental authority, by having authority and decision-making close to the people. As the theory goes, where the opportunity for popular participation and the gaining of maximum public understanding is greatest the likelihood of arbitrariness and imposition is least." Fordham, Decision-Making in Expanding American Urban Life, 21 Ohio St L J 274, 275 (1960).

"* * * [L]ocal governmental officials are much closer to the people than are state officers and the influence of the public on them is much more direct and powerful." Mott, Strengthening Home Rule, 39 Nat Mun Rev 172, 175 (1950).

"* * * Local responsibility for the conduct of public affairs at the local level is a fundamental political value in the American scheme of things." Fordham and Asher, Home Rule Powers in Theory and Practice, 9 Ohio St L J 18 at p. 70 (1948).

"* * * A municipal administration is more responsive to the needs of local citizens, since it must depend exclusively on these people for re-election. Second, a local government is more efficient to the extent that efficiency is increased by closeness to the scene of operations and accessibility to the criticism and suggestions of the persons governed." Note, 72 Harv L Rev 740, 742 (1959). See also, 39 Nat Mun Rev at 175, 179 (1950); 21 Ohio St L J at 279 (1960).

"* * * The state legislature is, in most states, clearly not now equal to the task of providing the needed governmental arrangements and flexibility of action demanded by the rapid development of metropolitan life. It is a part-time organ, with representation weighted against the urban centers, with a weak, understaffed committee system and antiquated procedures for policy-making." Fordham, Decision-Making in Expanding American Urban Life, 21 Ohio St L J 274, 279 (1960).

The constitutional recognition that the municipality is to have exclusive authority to legislate on some matters presupposes that we are able to decide whether a function is predominantly local or predominantly state-wide. Not being aided by any evidence on the question, we must make the choice solely upon the basis of our knowledge of the manner in which local and state governments operate and the relative importance of the function in question to the cities and to the state as a whole.[66] It has been said that "The question of which level of government should provide a given service is essentially a political one and should be determined by the political agencies of government."[67] But under the theory of home rule which we have adopted there are involved

---

[66] In some cases the division between state-wide and local matters is made upon the basis of the distinction between governmental and propietary functions, the latter being regarded as local. For example see Green v. City of Amarillo, 244 SW 241 (Tex Civ App 1922); Ruud, Legislative Jurisdiction of Texas Home Rule Cities, 37 Tex L Rev 682 at 687, n. 24 (1959). We do not regard this distinction as a reasonable basis for making the division of local and state powers.

[67] Mott, Strengthening Home Rule, 39 Nat Mun Rev 172 at 173 (1950). The author continues with the following criticism:

"Policy making by judicial hairsplitting is bad for the courts and bad for the cities. It has increasingly perverted judicial functions into political ones, consuming time and energy which should be devoted to legal problems. It has forced the cities to plead questions of policy before judges who often have little appreciation of the problems of municipal government."

See also 72 Harv L Rev at 742-743 (1959).

The complexity of the problem of assigning the responsibility of government at various levels is frequently noted. See, for example, 37 Nat Mun Rev 7 (1948). Although, through legal tradition, we tend to think of the city as a subsidiary unit of the state, the growing affiliation between federal and city government with the concomitant financial aid for municipal airports, urban development, hospitals, etc., is reshaping our views. See 15 U Chi L Rev 78 (1947) arguing strongly for city autonomy in relation to the state.

two political agencies making conflicting claims to sovereignty, and the resolution of that conflict must be made by the courts.

In our opinion the administrative machinery by which the employment and discharge of city firemen is to be determined is a matter of local concern. The principal function of a city fire department is to provide fire protection within the city. On occasion the department may be called upon to assist in the suppression of fires outside of its limits,[8] or it may engage in other cooperative extramural activities but this interrelation between the city and those benefited outside is not of such frequency and importance as to warrant describing it as a matter of state-wide concern.

Plaintiffs argue that because by statute (ORS 476.060) city fire department chiefs are ex-officio assistant fire marshals subject to the direction of the state fire marshal the state has "a direct and definite concern under the police power with the fire departments of the municipalities of the state." There can be no doubt that for the reason given the state has some "concern" with the operation of local fire departments. However, the question is not simply whether the state has an interest in such operations, but whether it is substantial enough to predominate over the interest of the city.

At this point it is important to observe certain refinements. It is not necessary to regard all of the activities of a municipal department as either local or state-wide; some of the activities may be predominantly local, whereas others may be predomi-

---

[8] Equipment and personnel are subject to use and direction outside the boundaries of the city under the Emergency Conflagration Act, ORS 476.510 to 476.610.

nantly state-wide. A statute standardizing fire hose couplings would very likely be held to be binding upon the various cities; whereas a statute standardizing the style of firemen's uniforms would not.[19]

We are unable to see how the manner of the employment and discharge of the personnel of a city fire department is relevant in any substantial way to the function of the state in the field of fire protection. Granting that a compulsory civil service system for firemen would tend to improve the quality of the personnel in city fire departments throughout the state, it seems to us that considering the limited function which the city fireman performs outside the city there is not a sufficient justification for depriving the city of control over this aspect of the operation of city government. If the legislative assembly has the power to deprive the people of municipalities of self-government in this respect, it would be difficult to imagine an area of activity engaged in by the city which could not be similarly controlled.[20]

The cases from other jurisdictions relating to the power of the state or municipality over the employment and discharge of municipal personnel are in conflict. It is difficult to appraise these cases in relation to the problem before us because, as was pointed

---

[19] See, Fordham and Asher, Home Rule Powers in Theory and Practice, 9 Ohio St L J 18 at 32 (1948) suggesting "that there might be local autonomy in organization, personnel and administration subject only to state requirements and standards as to character and extent of service and quality of performance."

[20] It has been pointed out that "[a] test that looks only to the existence of some state interest as a basis for declaring an ordinance which conflicts with a statute invalid renders it almost impossible to reach a decision in favor of the ordinance" because "[e]ven in those matters most intimately connected with municipal government * * * there is necessarily some state-wide effect." Note, 72 Harv L Rev 740 at 742 (1959).

out in *Schmidt v. City of Cornelius,* supra at p. 512, our constitutional provisions on home rule are unique. Many cases, as noted in the margin, hold such problems to be of local concern,[21] while others hold them to be of state-wide interest.[22]

---

[21] The administration and operation of a municipal fire department have been held to be matters of local concern: Jackson v. Wilde, 52 Cal App 259, 198 P 822 (1921) (fixing firemen's compensation); City of Lexington v. Thompson, 113 Ky 540, 68 SW 477 (1902) (fixing firemen's compensation); Simpson v. Gage, 195 Mich 581, 161 NW 898 (1917) (regulation of firemen's leave time); State ex rel Fischer v. City of Lincoln, 137 Neb 97, 288 NW 499 (1939) (discharge of firemen); City of Wewoka v. Rodman, 172 Okl 630, 46 P2d 334 (1935) (discharge of firemen); State ex rel Geake v. Fox, 158 Ind 126, 63 NE 19 (1902) (statute creating municipal board to administer fire department held void); Popper v. Broderick, 123 Cal 456, 56 P 53 (1899) (fixing firemen's and policemen's compensation); State ex rel Holt v. Denny, 118 Ind 449, 21 NE 274 (1889) (fire, police and public works held local matters).

Similarly with respect to the administration of the police department: Richards v. Wheeler, 10 Cal App2d 108, 51 P2d 436 (1935) (police and firemen's pensions); Lemaire v. Crockett, 116 Me 263, 101 A 302 (1917) (appointment of city police commissioner); State ex rel Canada v. Phillips, 168 Ohio St 191, 151 NE2d 722 (1958) (selection of officers of police force contrary to procedures prescribed by state civil service statute, overruling earlier Ohio cases); State ex rel Lynch v. City of Cleveland, 164 Ohio St 437, 132 NE2d 118 (1956) (selection of police chief outside of civil service list); Harsney v. Allen, 160 Ohio St 36, 113 NE2d 86 (1953) (classification of police personnel); Hile v. City of Cleveland, 118 Ohio St 99, 160 NE 621 (1928) (appointment of chief of police); State ex rel Vogt v. Donahey, 108 Ohio St 440, 140 NE 609 (1923) (appointment of police officials); Goodwin v. Oklahoma City, 199 Okl 26, 182 P2d 762 (1947) (discharge of police officer); In re Addison, 385 Pa 48, 122 A2d 272 (1956) (discharge of police officer).

See also, Scheafer v. Herman, 172 Cal 338, 155 P 1084 (1916) (recall procedures affecting city attorney held municipal affair); State ex rel Frankenstein v. Hillenbrand, 100 Ohio St 339, 126 NE 309 (1919) (qualifications of city mayor); Fitzgerald v. City of Cleveland, 88 Ohio St 338, 103 NE 512 (1915) (election of municipal officers held matter of local self-government); State ex rel Lentz v. Edwards, 90 Ohio St 305, 107 NE 768 (1914) (appointment of civil service commissioners).

[22] State ex rel Strain v. Houston, 138 Ohio St 203, 34 NE2d 219 (1941) (statute requiring organization of city fire depart-

■ Plaintiffs rely upon *Thurber v. McMinnville,* 63 Or 410, 414, 128 P 43, 44 (erroneously titled *Thurber v. Henderson*) (1912) for the proposition that Article XI, § 2 "being a grant of the sovereign power of the State to the particular local subdivisions named, and being a limitation on the power of the legislature, it

ments into two platoon systems prevails over charter); City of Cincinnati v. Gamble, 138 Ohio St 220, 34 NE2d 226 (1941) (statute relating to pension fund for police and firemen takes precedence over city retirement system); Dry v. Davidson, 115 SW2d 689 (Tex 1938) (firemen's minimum salary statute held to prevail over lesser salary schedule set by city ordinance); State ex rel Benson v. Peterson, 180 Minn 352, 230 NW 830 (1930) (civil service for city firemen held matter of state-wide concern); Van Gilder v. City of Madison, 222 Wis 58, 267 NW 25, 105 ALR 244 (1936) (city police salaries held matter of state-wide interest); Littell v. City of Peoria, 374 Ill 344, 29 NE2d 533 (1940) (statute setting minimum wages for policemen held controlling over city salary schedule).

Where city home rule is derived from legislation there is a tendency to subordinate the city charter to the statute. Redell v. Moores, 63 Neb 219, 88 NW 243 (1901) (statute authorizing governor to appoint city police commissioners held valid, overruling State ex rel Smyth v. Moores, 55 Neb 480, 76 NW 175 (1898)); State ex rel Schroeder v. Morris, 199 Ind 78, 155 NE 198 (1927) (statute requiring establishment of day and night fire platoons for cities held controlling); McLyman v. Holt, 51 RI 96, 151 A 1 (1930) (establishment of a "two platoon system" for city fire department by statute held valid exercise of legislative authority although contrary to municipal charter); City of Providence v. Moulton, 52 RI 236, 160 A 75 (1932) (statute placing control of municipal police, fire and public service engineer departments under state-appointed commission held controlling).

There appears to be a growing tendency to treat the administration of fire and police departments as matters of local concern. Thus in Ohio, State ex rel Canada v. Phillips, 168 Ohio St 191, 151 NE2d 722 (1958) overrules the following cases: State ex rel Arey v. Sherrill, 142 Ohio St 574, 53 NE2d 501 (1944) (hearing on suspension of a city policeman must comply with state statute); State ex rel Daly v. City of Toledo, 142 Ohio St 123, 50 NE2d 338 (1943) (firemen's tenure statute held superior to city ordinance requiring compulsory retirement at age 65); State ex rel O'Driscoll v. Cull, 138 Ohio St 516, 37 NE2d 49 (1941) (city educational requirement for police civil service applicants held subordinate to state statute prohibiting such requirements as a condition to taking civil service test).

should be strictly construed." We reject this rule of construction. The grant of sovereignty emanates from the same source, the people of the state. There is nothing in the manner of making the division of sovereignty which would suggest a constructional preference for state legislation. In fact, there is reason to accept a contrary construction favoring the charter over the statute if we should take the view expressed by many that home rule is superior to state rule in carrying out the ideals of representative government. It has been urged that "Unless there is an imperative need that a service have statewide uniformity, it may be presumed that local agencies will perform it with greater public satisfaction, if not indeed with greater economy."[⊕] If this view were accepted, the charter would receive the favored construction. But we do not think that there is room for a preference either way. Each case requires a weighing of the state's interest against the interest of the municipality. In some instances the need for uniformity, or the benefit of a widespread application of the law, or the recognition that the matter dealt with is interrelated with other functions of the state and similar considerations will require that the statute have preference over the charter; on the other hand the charter will prevail when the advantages of local autonomy are paramount.

It is our opinion that the establishment of a civil service system for firemen is a matter of local concern. Therefore the judgment granting a peremptory writ of mandamus must be reversed and the cause remanded with directions to dismiss the petition.

Judgment reversed.

---

[⊕] Mott, Strengthening Home Rule, 39 Nat Mun Rev 172, 175 (1950).