Argued and submitted May 16, 2006, reversed February 28, 2007

Michael McGEE,
*Plaintiff-Respondent,*

*v.*

CIVIL SERVICE BOARD
OF THE CITY OF PORTLAND,
*Defendant-Appellant.*

Multnomah County Circuit Court
0404-03645; A128106
(Control)

Joseph GYMKOWSKI,
*Plaintiff-Respondent,*

*v.*

CIVIL SERVICE BOARD
OF THE CITY OF PORTLAND,
*Defendant-Appellant.*

Multnomah County Circuit Court
0404-03783; A128107

154 P3d 135

Harry Auerbach, Chief Deputy City Attorney, argued the cause and filed the briefs for appellant.

Monica Smith and Elizabeth A. Joffe argued the cause for respondents. With them on the joint brief were Smith, Diamond & Olney and McKanna Bishop Joffe & Sullivan.

Before Landau, Presiding Judge, and Wollheim and Schuman,* Judges.

LANDAU, P. J.

* Schuman, J., *vice* Ceniceros, S. J.

**LANDAU, P. J.**

Plaintiffs are two Portland Fire Bureau captains who unsuccessfully applied for promotion to the position of battalion chief. They complained to the City of Portland Civil Service Board (board) that the Portland Fire Bureau Chief had passed them over for unlawful reasons. The board determined that, under the city charter and personnel rules, it lacked authority to review the director's decision. Plaintiffs then initiated this writ of review action. The trial court concluded that, although the board is correct that the city charter and personnel rules do not authorize the board to review the chief's decision, the Civil Service for Firefighters Act, ORS 242.702 to 242.824, nevertheless requires the board to undertake the review.

The board appeals, arguing that the trial court erred in concluding that the Act requires it to undertake the review of plaintiffs' claims. The board argues that Article XI, section 2, of the Oregon Constitution precludes the application of that Act to the city. In the alternative, the board argues that, even if the Act could be applied to the city, by its terms the Act does not in fact apply to this case. We agree with the board that Article XI, section 2, prohibits the Act from applying to the city and, as a result, need not address the board's alternative argument. We therefore reverse.

## I. BACKGROUND

To provide context for the description of the facts and the legal issues that arise from them, we begin with a brief summary of the regulatory framework involved in this case.

### A. *The City of Portland Merit System*

The Portland City Charter, first adopted in 1903, created a "merit system" that applies to the city's personnel decisions. Portland City Charter § 4-101 (1987). Among other things, the charter created a Bureau of Personnel Services, managed by a director and charged with authority to implement the personnel system. *Id.* at §§ 4-201, 4-301, 4-401. The Bureau adopted administrative rules to do just that, including rules pertaining to the development of eligibility lists, recruitment, and selection of employees. City of Portland

Human Resources Administrative Rules §§ 3.01-3.02. Pertinent to this case are rules that provide that the director is required to approve a list of eligible candidates, while the actual hiring decision from that list rests with the particular bureau or appointing authority involved. *Id.* The appointing authority may select from the candidates who rank the highest on the eligibility list. *Id.*

The charter also created a Civil Service Board, consisting of three members appointed by the mayor. Portland City Charter at § 4-104. The board may review three—and only three—categories of personnel decisions: (1) certain disciplinary actions; (2) classification actions; and (3) "appeals by candidates for appointment or promotion to positions in the classified service, where the applicant for appointment or employee/candidate for promotion alleges that the Director failed to follow rules promulgated by the director under this Chapter for selecting candidates for appointment or promotion to classified positions." *Id.* at § 4-106. Board decisions, in turn, may be reviewed by writ of review in the circuit court.

B.  *The Civil Service for Firefighters Act of 1959*

Meanwhile, in 1959, the legislature enacted the Civil Service for Firefighters Act. ORS 242.702 to 242.824. The Act purports to apply to any "political subdivision," which is defined to include any city, county, municipal corporation, and fire protection district that employs four or more full-time firefighters. ORS 242.702(9). The Act requires such political subdivisions to create three-person civil service commissions to be appointed or confirmed by the governing bodies of the political subdivisions. ORS 242.706(1). It then requires such civil service commissions to develop regulations to "provide in detail the manner in which examinations shall be held, and appointments, promotions, demotions, transfers, reinstatements, suspensions, and discharges shall be made." ORS 242.724(1).

The Act includes detailed requirements that political subdivisions must follow in making appointment and promotion decisions. Among other things, the Act requires that political subdivisions offer examinations at specified intervals. ORS 242.762. The Act then requires political subdivisions to maintain lists of qualified candidates, based on the

results of such examinations along with the results of any investigations. ORS 242.764. Appointing authorities must appoint individuals to civil service positions from the list of qualified candidates. ORS 242.766(1). If the appointing authority considers a candidate unqualified, it must explain the reasons for that conclusion in writing. *Id.* The Act then provides that the civil service commission "shall investigate and decide on the validity of the reasons submitted." *Id.*

The Act provides an exemption for any political subdivision that has established its own civil service system for firefighters as long as that system "substantially accomplishes the purposes of [the Act]." ORS 242.704(1).

## C. *Facts of this case*

In this case, plaintiffs applied for promotions to the position of battalion chief in the Portland Fire Bureau. The fire bureau conducted a promotional examination, which both plaintiffs passed. The fire bureau then placed plaintiffs on an "eligible list" for promotion, which list the director of the Human Resources Bureau approved in 2001.

In 2003, a vacancy occurred in the battalion chief position. The Fire Bureau Chief—the "appointing authority" in this case—informed plaintiffs that neither of them would be promoted to fill the vacancy. In fact, the chief decided not to fill the vacancy with any person then on the eligible list. Instead, the chief decided to allow the list to expire and start the promotion process over.

Plaintiffs appealed the chief's decision to the board. Both contended that the chief had decided not to promote them based on impermissible criteria rather than on merit. The board concluded that, under the terms of the city charter, it lacked jurisdiction to review the appeal. According to the board, the city charter permits appeals of decisions of the director of the Human Resources Bureau concerning the examination process itself—that is, decisions approving eligibility lists—but does not permit appeals of decisions of appointing authorities not to promote from those lists.

Plaintiffs filed a petition for a writ of review with the circuit court. In a carefully considered opinion and order, the trial court concluded that the board was correct that the city

charter does not authorize appeals of decisions of appointing authorities not to hire from eligibility lists. The court also concluded, however, that, precisely because the city charter does not provide for appeals of such decisions, the city charter is "legally deficient." According to the trial court, state law—specifically, the Civil Service for Firefighters Act—requires that city charters include civil service systems that "substantially accomplish the general purposes" of the Act, which the court determined included appeals from appointing authorities' decisions not to promote from eligibility lists. The court acknowledged that application of the state law to the city impinges somewhat on local government authority. The court, however, concluded that the Civil Service for Firefighters Act addressed matters more substantive than structural and so did not violate constitutional restrictions on state interference with municipal authority.

The board appeals, arguing that the trial court erred for essentially two reasons. First, the board argues, under *State ex rel Heinig v. Milwaukie et al*, 231 Or 473, 373 P2d 680 (1962), the "home rule" provisions of the Oregon Constitution prohibit the application of the Civil Service for Firefighters Act to the City of Portland. According to the board, *Heinig* expressly held that the establishment of a civil service for firefighters is a matter of purely local concern and that the state cannot compel home rule cities to comply with state civil service laws pertaining to those firefighters. Second, the board argues, even if the Civil Service for Firefighters Act applies to the City of Portland, and even if the Act requires appeals in cases such as this (which the board contests), the city is nevertheless exempt from the appeal provisions of the Act in this case because the city's civil service system "substantially accomplishes the general purposes" of the Act.

In response, plaintiffs first contend that, although *Heinig* held that the state could not compel a home rule city to establish a civil service commission for firefighters, later cases have altered the analysis that applies to such questions and, under the more recent analysis, the home rule provisions of the state constitution do not preclude application of the state civil service law to the city. As for the question whether the city is nevertheless exempt from that state law, plaintiffs contend that, because the city charter provides for

no review of promotion decisions, it fails to "substantially accomplish the general purposes" of the Act. Consequently, plaintiffs argue, the trial court correctly concluded that the city charter is deficient and that the board must review their claims.

## II. ANALYSIS

■■ We begin and end with the board's initial argument, because it is dispositive. The lawmaking authority of the Oregon legislature is plenary, subject only to limitations in the state constitution or from federal law. *Kellas v. Dept. of Corrections*, 341 Or 471, 478, 145 P3d 139 (2006). One such limitation on the lawmaking authority of the legislature may be found in Article XI, section 2, of the Oregon Constitution, which provides, in part:

> "The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon[.]"

The precise scope of the limitation on legislative authority that is expressed in Article XI, section 2, has been the subject of quite a number of cases. *See, e.g., LaGrande/Astoria v. PERB*, 281 Or 137, 141, 576 P2d 1204, *on reh'g*, 284 Or 173, 586 P2d 765 (1978) (identifying more than 75 such cases by 1978). But only a few—three, to be precise—need be mentioned to resolve the issues in this case.

*Heinig* is the first and most important, because it involves the question whether Article XI, section 2, bars the application of the very same statute at issue in this case to a home rule city. In *Heinig*, the plaintiff sought to compel the City of Milwaukie to establish a civil service system for firefighters in accordance with the Civil Service for Firefighters Act of 1959. The City of Milwaukie operated under a home rule charter, and that charter had made no provision for the establishment of a civil service system for firefighters. The plaintiff argued that, because the city plainly qualified as a "political subdivision" to which the Act applied, the court should order the city to establish the civil service commission that the Act requires. In response, the city argued that, under

Article XI, section 2, the Act could not lawfully apply to it. According to the city, matters relating to the employment and discharge of firefighters are matters of purely local concern and therefore not subject to state legislative control. The plaintiff replied that the statute did not run afoul of Article XI, section 2, because it applied not to one city but to all municipalities in the state. 231 Or at 479.

The Supreme Court agreed with the city:

"[T]he legislative assembly does not have the authority to enact a law relating to city government even though it is of general applicability to all cities in the state unless the subject matter of the enactment is of general concern to the state as a whole, that is to say that it is a matter of more than local concern to each of the municipalities purported to be regulated by the enactment."

*Id.* at 479. Whether the subject of an enactment is "of general concern to the state as a whole," the court explained, is not determined by reference to a neat definition of "state" as opposed to "local" or "municipal" interests, as both state and local governments may have legitimate interests in the same matters. *Id.* at 481. The controlling question is whether state or local interests predominate, which requires a weighing of competing state and local interests. *Id.* at 483. Turning to the particular interests at issue in that case, the court concluded that, "[i]n our opinion, the administrative machinery by which the employment and discharge of city fire[fighters] is to be determined is a matter of local concern." *Id.* at 484. The city, the court concluded, could not be compelled to comply with the Civil Service for Firefighters Act. *Id.* at 488.

The Supreme Court returned to the scope of the limitation on legislative authority expressed in Article XI, section 2, in *LaGrande/Astoria*. At issue in that case was whether the legislature constitutionally could require the cities of LaGrande and Astoria to make their police officers and firefighters members of the state's Public Employees Retirement System. In a 4-3 decision, the court concluded that the legislature could require cities to do so without running afoul of Article XI, section 2. *LaGrande/Astoria*, 281 Or at 140. In

arriving at that conclusion, the court canvassed its prior decisions on that provision of the state constitution and determined that a refinement of its earlier statements about the reach of the provision was in order. In particular, the court focused on the proper analysis by which to determine whether a state law pertains to matters of predominantly state or local concern. In a nutshell, the court shied away from the balancing of state and local interests to which the court had referred in *Heinig* and substituted a more categorical distinction between laws that pertain to the structures of local governments, on the one hand, and those pertaining to substantive social or economic concerns, on the other:

> "When a statute is addressed to a concern of the state with the structure and procedures of local agencies, the statute impinges on the powers reserved by the amendments to the citizens of local communities. Such a state concern must be justified by a need to safeguard the interests of persons or entities affected by the procedures of local government.

> "Conversely, a general law addressed primarily to substantive social, economic, or other regulatory objectives of the state prevails over contrary policies preferred by some local governments if it is clearly intended to do so, unless the law is shown to be irreconcilable with the local community's freedom to choose its own political form. In that case, such a state law must yield in those particulars necessary to preserve that freedom of local organization."

*Id.* at 156 (footnote omitted).

In formulating that analysis, however, the court expressly declined to overrule *Heinig*. To the contrary, the court concluded that the essential holding of *Heinig* "states the rule for testing general laws" under Article XI, section 2. *LaGrande/Astoria*, 281 Or at 146. What is more, the court expressly reaffirmed the result in *Heinig*, that is, that the legislature could not lawfully require home rule cities to comply with the Civil Service for Firefighters Act. The court, in fact, compared the retirement statute at issue in that case with the Civil Service for Firefighters Act to explain precisely why the former could apply to cities while the latter could not.

According to the court in *LaGrande/Astoria*, the retirement statutes "plainly embody a legislative concern with securing the postemployment living standards of persons * * * not with the cities' governmental organization." 281 Or at 151. In contrast, the court described the statute at issue in *Heinig* in the following terms:

> "[W]hile the statute involved in *Heinig* did not single out one city, it also undertook by the act itself to create municipal civil service commissions, to be composed of three members selected in the manner prescribed by the act, which would be charged with supervising civil service systems, for fire[fighters]. Even apart from this direct prescription of an element in the city's administrative structure, the civil service law would have displaced the authority of the politically accountable local officials over the selections, assignment, discipline, and replacement of the employees for whose performance they were responsible, and done so not as a matter of the community's policy or negotiated agreement but by directions from the state. This is a substantially different interference with local self-government from an obligation to provide a measure of economic security to public employees."

*Id.* at 152. Even under the analysis that it formulated in *LaGrande/Astoria*, the court concluded, applying the Civil Service for Firefighters Act to home rule local governments would violate Article XI, section 2. *Id.*

The court addressed the scope of Article XI, section 2, yet again in *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 639 P2d 90 (1981). In that case, the question was whether the legislature could require local governments to comply with the Public Employees Collective Bargaining Act (PECBA), ORS 243.650 to 243.782. The court concluded that, under the analysis developed in *LaGrande/Astoria*, PECBA was a general law addressed primarily to substantive social, economic, and other objectives that did not impinge on the local government's ability to choose its own political form. 292 Or at 278. As in *LaGrande/Astoria*, the court in *City of Roseburg* expressly distinguished *Heinig* and reaffirmed its continuing vitality:

"If the state legislation had required local government to resolve its labor disputes by means of specified local governmental agencies or procedures such as a Municipal Employment Relations Board, then PECBA would be open to challenge under the precedent of *State ex rel Heinig v. Milwaukie, et al,* 231 Or 473, 373 P2d 680 (1962). There, a statute required local governments to establish civil service commissions to control municipal employment relations of firemen. We held that because municipal interest in the organization of fire suppression was greater than the state's, the statute offended the principles of home rule. Like the *Heinig* legislation, PECBA establishes state policy. Unlike the *Heinig* statute, however, PECBA requires no local agencies. Rather, it assigns political responsibility for administration and decision making to an agency of the state."

292 Or at 278.

The foregoing discussion makes clear that *Heinig* is controlling. It involved the applicability of the very same statute at issue in this case to a home rule municipality. It concluded that such a statute cannot apply to a home rule municipality without violating Article XI, section 2.

Plaintiffs insist that *Heinig* either is no longer good law or is distinguishable on its facts. In support of the former argument, plaintiffs note that, in *LaGrande/Astoria,* the Supreme Court expressly departed from the "weighing" of state and local interests that characterized the analysis in *Heinig* in favor of a test that distinguishes between state regulation of the form or structure of local government and regulation of substantive social and economic policy. Under the *LaGrande/Astoria* test, plaintiffs argue, the Civil Service for Firefighters Act poses no Article XI, section 2, problem.

Plaintiffs' observation that the Supreme Court articulated a different test in *LaGrande/Astoria* is correct. And whether the application of the Civil Service for Firefighters Act to home rule municipalities would violate Article XI, section 2, under that test is an interesting question, in the abstract. It is, however, an irrelevant question, for the Supreme Court has expressly and repeatedly stated that it believes that the result in *Heinig* continues to be correct and that, even under the *LaGrande/Astoria* test, applying the

Civil Service for Firefighters Act to home rule municipalities would violate Article XI, section 2. That, for us, ends the matter.

In support of their latter argument—that *Heinig* is distinguishable—plaintiffs contend that, "[w]hile it is true that the *LaGrande/Astoria* court did not overrule *Heinig*, it did limit *Heinig* to its specific facts." According to plaintiffs, those "specific facts" are that a state law cannot require a home rule municipality to *create* a civil service commission. In this case, they argue, the City of Portland had already created a civil service commission; the only question is the extent to which the state legislature can dictate how that commission can operate, an issue that *Heinig* did not address.

We are not persuaded by plaintiffs' argument. To begin with, the argument rests on an incorrect premise. The Civil Service for Firefighters Act does not merely regulate the operation of existing municipal commissions. It expressly obligates political subdivisions to create civil service commissions and prescribes the form of those commissions, how they are selected, and the powers that they must exercise. Aside from that, the Supreme Court has rejected the very argument that plaintiffs now advance to us. As we have noted, in *LaGrande/Astoria*, the court explained that *Heinig* correctly concluded that a state law requiring a city to create a civil service commission violated Article XI, section 2. 281 Or at 152. The court then added that, *"[e]ven apart from this direct prescription of an element in the city's administrative structure*, the civil service law would have displaced the authority of the politically accountable local officials over the selection, assignment, discipline, and replacement of the employees for whose performance they were responsible[.]" *Id.* (emphasis added). That, the court explained, is "substantially different" from the sort of regulation that the state lawfully may impose on local governments. *Id.*

We conclude that the trial court erred in concluding that applying the Civil Service for Firefighters Act to the city does not violate Article XI, section 2, of the Oregon Constitution. In light of that conclusion, we do not need to address

plaintiffs' other arguments about whether the board, in fact, violated the Act.

Reversed.