Submitted on record and briefs August 9, affirmed November 2, 2005

Henry KANE,
*Petitioner below,*
*and*

Mariam Jane CORBY
and Scott Monson,
*Petitioners,*

*v.*

CITY OF BEAVERTON,
*Respondent.*

2005-018; A129166

122 P3d 137

Alan A. Rappleyea filed the brief for respondent.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioners[1] seek review of a Land Use Board of Appeals order affirming the City of Beaverton's decision to annex certain "island" territory pursuant to ORS 222.750. Petitioners advance a number of assignments of error, most of which were not adequately preserved below. We reject all of petitioners' assignments of error and affirm. We write only to address petitioners' argument that ORS 222.750 violates their constitutional rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Over a period of years, the City of Beaverton annexed streets and highway rights-of-way near the interchange of Highway 26 and Highway 217. As a result, the city's boundaries surround or nearly surround large areas of urbanized and unurbanized land within Washington County. In November 2004, the city initiated proceedings to annex some of this surrounded, or "island," territory pursuant to ORS 222.750. That statute allows a city to annex territory that is surrounded by the corporate boundaries of the city, or by the city and a body of water, without the consent of residents or property owners within the territory.[2]

After initiating annexation proceedings, the city provided notice to property owners within the subject territory and conducted a public hearing. No election for the affected landowners was held. Ultimately, the city adopted Ordinance 4334 on January 3, 2005, which annexed the subject territory. Petitioners, who allege that they own property in the

---

[1] Petitioners in this case are Mariam Jane Corby and Scott Monson. Henry Kane was dismissed as a party for lack of standing.

[2] ORS 222.750 provides:

"When territory not within a city is surrounded by the corporate boundaries of the city, or by the corporate boundaries of the city and the ocean shore or a stream, bay, lake or other body of water, it is within the power and authority of that city to annex such territory. However, this section does not apply when the territory not within a city is surrounded entirely by water. Unless otherwise required by its charter, annexation by a city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident in the territory."

subject territory, appealed to LUBA. LUBA affirmed the city's decision, and this petition for judicial review followed.

On review, petitioners contend—among other things—that LUBA erred in rejecting their argument that ORS 222.750 violates their rights under the Equal Protection Clause of the Fourteenth Amendment.[3] We review LUBA's determination on that issue for errors of law. ORS 197.850(9)(b); *Corp. of Presiding Bishop v. City of West Linn*, 192 Or App 567, 577, 86 P3d 1140 (2004), *aff'd*, 338 Or 453, 111 P3d 1123 (2005).

The Fourteenth Amendment provides, in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ ■ Under Fourteenth Amendment equal protection jurisprudence, a statute that differentiates on the basis of a "suspect" classification or a classification that infringes upon a fundamental right is subject to heightened scrutiny. Conversely, a statute that does not differentiate based on a suspect class or a classification that infringes upon a fundamental right is subject to "rational-basis" review. *Heller v. Doe*, 509 US 312, 319-20, 113 S Ct 2637, 125 L Ed 2d 257 (1993); *McGinley and McGinley*, 172 Or App 717, 722, 19 P3d 954, *rev den*, 332 Or 305 (2001). Under that less demanding standard, a statute must be upheld as long as it is tied to a legitimate governmental purpose, regardless of whether that purpose is set out in the statute or legislative history, or was even considered by the legislature. *Heller*, 509 US at 320.

At the core of petitioners' equal protection argument is the premise that ORS 222.750 unconstitutionally deprives residents and property owners in "island" territories of the

---

[3] Before LUBA, petitioners advanced the related argument that ORS 222.750 violates Article I, section 20, of the Oregon Constitution, which provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." However, petitioners do not raise that argument on appeal, and we do not address it. ORAP 5.45.

fundamental right to vote on annexations. According to petitioners, that fundamental right cannot be infringed upon in the absence of a "compelling state interest." Petitioners' argument stumbles from the outset, however, because there is no fundamental right to vote on municipal annexations.

■ ■ In *Mid-County Future Alternatives v. City of Portland*, 310 Or 152, 166, 795 P2d 541 (1990), the Oregon Supreme Court rejected the argument that, "as a matter of constitutional law," residents or property owners must "be allowed to vote on any annexation to which they might be subjected." The court stated flatly, "There is no federal constitutional right to vote on municipal annexations." *Id.* It then proceeded to explicitly disavow prior case law suggesting otherwise. *Id.* Accordingly, we hold that the "no vote" characteristic of ORS 222.750 does not implicate a fundamental right for purposes of the Equal Protection Clause of the Fourteenth Amendment. *See id.; see also Hunter v. City of Pittsburgh*, 207 US 161, 178-79, 28 S Ct 40, 52 L Ed 151 (1907) ("The State * * * at its pleasure, may * * * expand or contract the territorial area, unite the whole or a part of it with another municipality * * * *with or without the consent of the citizens, or even against their protest.*") (Emphasis added.).[4]

Although the precise nature of their argument is unclear, petitioners also appear to contend that, regardless of whether there is a fundamental right to vote on annexation,

---

[4] Other courts that have considered whether there exists a "fundamental right" to vote in municipal annexations have similarly rejected that notion. *See, e.g., Barefoot v. City of Wilmington*, 306 F3d 113, 121-23 (4th Cir 2002) (citizens do not have a fundamental right to vote on annexation); *Moorman v. Wood*, 504 F Supp 467, 474 (1980) (ED Ky) ("granting the franchise [for annexation elections] to residents of one area, and denying it to those of another area * * *" does not deny a fundamental right); *Givorns v. City of Valley*, 598 So2d 1338, 1341 (Ala 1992) (statute imposing geographic restrictions on right to vote in annexation elections does not infringe upon a fundamental right); *Beck v. City of San Mateo*, 154 Cal App 3d 374, 201 Cal Rptr 365 (1984) (statute denying voting rights to "island" territories substantially surrounded by annexing community did not infringe upon a fundamental right); *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wash 2d 791, 814, 83 P3d 419 (2004) (en banc) ("[T]he citizens of the State have no fundamental right of citizenship to seek annexation. Nor do they have any such right to prevent annexation. The power is entirely that of the legislature, which may delegate to the cities.").

once the state has granted that right to some property owners, that right cannot be denied to other property owners. Specifically, petitioners contend that the right to vote is granted to residents and property owners in non-"island" territories by ORS 222.111(5). That statute provides:

> "The legislative body of the city shall submit, except when not required under ORS 222.120, 222.170 and 222.840 to 222.915 to do so, the proposal for annexation to the electors of the territory proposed for annexation and, except when permitted under ORS 222.120 or 222.840 to 222.915 to dispense with submitting the proposal for annexation to the electors of the city, *the legislative body of the city shall submit such proposal to the electors of the city.* The proposal for annexation may be voted upon at a general election or at a special election to be held for that purpose."

(Emphasis added.)

We rejected an argument similar to that of petitioners in *Sherwood School Dist. 88J v. Washington Cty. Ed. Service Dist.*, 167 Or App 372, 6 P3d 518, *rev den*, 331 Or 361 (2000), in the context of the right to vote on local school boundary changes. In that case, the plaintiffs conceded that they did not have a fundamental constitutional right to vote on local school boundary changes. "They insist[ed], however, that, once the state permits anyone to vote on school district boundary changes, it cannot deny the right to anyone else in the absence of a compelling justification." *Id.* at 391. The plaintiffs relied, as do petitioners in this case, on *Kramer v. Union Free School Disrict No. 15*, 395 US 621, 89 S Ct 1886, 23 L Ed 2d 583 (1969), and *Hussey v. City of Portland*, 64 F3d 1260 (9th Cir 1995). *Sherwood School Dist. 88J*, 167 Or App at 391.

Ultimately, we concluded that the plaintiffs read *Kramer* and *Hussey* too broadly. *Id.* In *Kramer*, a New York statute provided that, in certain school districts, school board members were to be elected only by those people in the district who owned property or had children enrolled in the district. In other districts, all qualified voters were entitled to vote on board membership. In still other districts, school board members were appointed. A resident in the first category of districts who neither owned property nor had children

enrolled in the district challenged the statute that imposed those qualifications on the right to vote. As we read *Kramer*, "the Court held that, once it is determined that an election will be held, the decision as to who may vote *in that election* is subject to strict scrutiny." *Sherwood School Dist. 88J*, 167 Or App at 391 (emphasis in original). The Court, we noted, "drew a distinction between deciding who may vote in an election and deciding whether an election will be held at all." *Id*.

In *Hussey*, the issue was annexation. The plaintiffs in that case challenged the constitutionality of a City of Portland ordinance that offered a subsidy to residents who signed irrevocable consents to annexation. The Court of Appeals for the Ninth Circuit agreed with the city's position that there is no constitutional right to vote on annexation, but held that, "once the citizens are granted the right to vote on a matter, the exercise of that vote becomes protected by the Constitution even though the state was not obliged to allow any vote at all." *Hussey*, 64 F3d at 1263. We observed:

> "As in *Kramer*, the focus of the [c]ourt's opinion was on the *exercise* of the right to vote *in an election*. The [c]ourt held that, once the local government authorized an election, it could not condition the right to vote *in that election* without a compelling justification. The [c]ourt did not come close to suggesting that, once a local government confers the right to vote on a matter, the local government cannot in the future decide that the matter should be decided by another means."

*Sherwood School Dist. 88J*, 167 Or App at 392 (emphasis in original).

We then proceeded to distinguish the circumstances in *Sherwood School Dist. 88J* from the holdings in *Kramer* and *Hussey*:

> "In both [*Kramer* and *Hussey*], in other words, there was an election, and the government entities unlawfully imposed qualifications on who could vote *in that election*. That is not what happened in this case, in which the legislature has determined that a particular issue—the location of a school boundary—in a particular geographic area simply will not be decided by an election at all. As we have noted, the

legislature possesses the constitutional right to determine local school boundaries with or without an election. * * * Simply because the legislature determines to grant the people the power to vote on the issue does not mean that the legislature cannot change its mind and exercise its constitutional authority to decide the matter for itself."

*Sherwood School Dist. 88J*, 167 Or App at 392 (emphasis in original).

ORS 222.750, as did the statute in *Sherwood School Dist. 88J*, involves a determination of whether, in a particular circumstance, an election will be held; it does not unlawfully impose qualifications on who can participate, once the legislature has decided to hold an election. The legislature has simply exercised its constitutional authority to determine that, in a particular geographic area—namely, where territory is surrounded by the corporate boundaries of a city, or by the boundaries of a city and a stream, bay, lake, or other body of water—annexation of that territory may proceed without an election.[5] Consequently, everyone who falls within the scope of ORS 222.750 is treated identically.[6]

■    Because ORS 222.750 does not involve a classification that infringes upon a fundamental right or is somehow "suspect," the statute is subject to a "rational-basis" review. *Heller*, 509 US at 319. Under rational-basis review, a statute is accorded a strong presumption of validity and does not run afoul of the Equal Protection Clause if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320. Moreover, the legislature creating the category of treatment need not "actually articulate at any time the purpose or rationale supporting its classification." *Id.* Rather, "a classification must be

---

[5] Annexation of "island" territory is, however, subject to referendum. ORS 222.750 ("[A]nnexation by a city under this section shall be by ordinance or resolution *subject to referendum*, with or without the consent of any owner of property within the territory or resident in the territory." (Emphasis added.)).

[6] Had the legislature granted the right to vote on a particular annexation to certain individuals within the annexed territory, while not granting it to others within the same territory, we would be faced with a different question. *See, e.g., Mid-County Future Alternatives*, 310 Or at 166 ("To allow [a vote on annexation] may even be constitutionally mandated, if a vote is given to some who will (or whose property will) be annexed while it is not given to others similarly situated."). That is not the nature of the statute before us.

upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (internal quotation marks and citation omitted). The burden, therefore, falls "on the one attacking the legislative arrangement to negative every conceivable basis which might support it, * * * whether or not the basis has a foundation in the record." *Id.* (internal quotation marks and citation omitted).

■       As LUBA appropriately observed, there are a number of rational and legitimate reasons for disparate treatment of "island" territories:

> "An obvious reason is to reduce jurisdictional confusion, a concern that is generally not present in more ordinary annexations of contiguous lands. Other reasons are to improve administrative efficiency or provide municipal services more efficiently. * * * [I]t is not hard to imagine that in most if not all cases, establishing city rather than county jurisdiction over an area that is entirely surrounded by the city or the city and a body of water will tend to promote administrative and service efficiency, to the benefit of both the city and the residents of the territory."

*Kane v. City of Beaverton,* 49 Or LUBA 512 (2005). We agree with LUBA that, given those conceivable reasons, there is a rational basis for treating "island" territories differently than non-"island" territories. Accordingly, we conclude that, because there is a rational basis for the differential treatment provided in the statute, petitioners have failed to demonstrate that ORS 222.750 violates their rights under the Equal Protection Clause of the Fourteenth Amendment.

Affirmed.