Argued and submitted January 18, reversed and remanded as to petitioner Wells; affirmed as to petitioner Bold June 14, petition for review allowed October 19, 2006
(341 Or 548)

COSTCO WHOLESALE CORPORATION,
*Petitioner below,*
*and*

Henry KANE,
*Intervenor - Petitioner below,*

*v.*

CITY OF BEAVERTON,
*Respondent below.*
2005-044

WELLS REAL ESTATE FUNDS, INC.,
*Petitioner,*

*v.*

CITY OF BEAVERTON,
*Respondent.*
2005-046

BOLD, LLC,
*Petitioner,*
*and*

Henry KANE,
*Intervenor - Petitioner below,*

*v.*

CITY OF BEAVERTON,
*Respondent.*
2005-050

C.E. JOHN COMPANY, INC.,
*Petitioner below,*
*and*

Henry KANE,
*Intervenor - Petitioner below,*

*v.*

CITY OF BEAVERTON,
*Respondent below.*
2005-053; A130488

136 P3d 1219

Jack L. Orchard argued the cause for petitioners. With him on the brief were Dana L. Krawczuk and Ball Janik LLP.

Alan A. Rappleyea argued the cause for respondent. With him on the brief was Theodore R. Naemura.

Thomas Sponsler, Spencer Q. Parsons, and Beery, Elsner & Hammond, LLP filed the brief *amicus curiae* for League of Oregon Cities.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Petitioners on review Wells Real Estate Funds, Inc. (Wells), and Bold, LLC (Bold), seek judicial review of an order of the Land Use Board of Appeals (LUBA) that affirmed the decision of the City of Beaverton (city) that annexed certain parcels of land pursuant to the "island annexation" statute, ORS 222.750.[1] Petitioners argue, in part, that LUBA erroneously construed ORS 222.750 to authorize annexation of property without the consent of affected landowners where (a) the property is part of a larger area that is completely encompassed by a city's boundaries; but (b) the city elects not to annex that entire larger area. For the reasons set forth below, we agree with petitioners that LUBA so erred. Accordingly, we affirm in part and reverse in part, and remand for further proceedings.

Before describing the material facts pertaining to petitioners' properties, it is useful to "foreshadow" the statutory issue that permeates this dispute. In general under Oregon law, cities, to annex new territory, must do so either through elections or by obtaining consents from affected landowners. *See generally* ORS 222.111 - 222.183. However, and in derogation of that general principle, ORS 222.750 authorizes unilateral annexation under the following circumstances:

> "*When territory not within a city is surrounded by the corporate boundaries of the city*, or by the corporate boundaries of the city and the ocean shore or a stream, bay, lake or other body of water, *it is within the power and authority of that city to annex such territory*. However, this section does not apply when the territory not within a city is surrounded entirely by water. Unless otherwise required by its charter, annexation by a city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident in the territory."[2]

---

[1] The Oregon League of Cities also has appeared as *amicus curiae* in support of the position of respondent City of Beaverton.

[2] Somewhat ironically, although ORS 222.750 is commonly referred to as "the island annexation" statute, that statute, by its terms, precludes the annexation of "islands" in the literal sense of "territory * * * surrounded entirely by water."

(Emphasis added.)

Central to this dispute is the meaning of "surrounded by" as used in ORS 222.750. To frame the analysis that follows, and by way of gross illustration, we offer the following:

Figure 1        Figure 2        Figure 3

Here, all parties agree that if, as shown in Figure 1, an area is encompassed on all sides by corporate boundaries of a city, the city can annex that *entire* area ("A") under ORS 222.750. The dispute, however, is over the applicability of ORS 222.750 to the circumstances illustrated in Figures 2 and 3: If the city does not elect to annex all of the encompassed area ("A")—including parcel "B," which lies within "A"—but, instead, opts to annex *only* "B," does ORS 222.750 authorize the annexation of "B" alone?[3]

Against that backdrop, we return to the facts presented here. In early 2005, the city held hearings on four proposed ordinances authorizing annexation of territories pursuant to ORS 222.750. One of those ordinances, No. 4338, authorized annexation of an area in which some of petitioner Wells's properties are located, and another ordinance, No. 4339, authorized annexation of the area in which petitioner Bold's property lies.

---

In 2005, after the annexations at issue here, the legislature enacted substantial limitations on the City of Beaverton's authority to annex land pursuant to ORS 222.750. Or Laws 2005, ch 844, § 1.

[3] Figures 2 and 3 are, in fact, variations of that same issue, except that, in Figure 2, parcel "B" does not touch at all on the city's boundaries, while in Figure 3, part, but not all, of the boundary of "B" touches on the city's boundaries.

In particular, Wells's properties are located near the northwest boundary of the city in the area of Southwest Jenkins Road, 158th Avenue, and Baseline Road, with some of that property lying immediately adjacent to the "campus" headquarters of Nike, Inc. As originally proposed, the annexation would have included Nike's property, as well; however, the ordinance was amended after the hearing to exclude the Nike property, as well as certain parcels owned by Wells and leased to Nike. As shown on the "annexation hearing map" presented by the city, the area including both the Wells and Nike properties was completely encompassed by the city's corporate boundaries, *i.e.*, by properties within the city limits and by rights-of-way owned by the city. Thus, consistently with that map and as ultimately approved, the annexation of Wells's properties corresponded (very roughly) to the circumstances depicted in Figure 3: The area encompassed by the city's boundaries ("A") included both Wells's and Nike's properties, and, while the Wells property touched in part on the city's boundary, it also touched in part on Nike's property, which was not annexed. In sum, the city purported to annex some, but not all, of the area encompassed by the city's boundaries.

The configuration of Bold's property, and the associated annexation, appears to be simpler. Bold describes the location of its property as "south of Highway 26, and * * * bordered to the west by NW Bethany Boulevard, with the curve of NW Cornell Road serving as the southern and eastern boundary[.]" As shown on the "annexation hearing map," the boundaries of Bold's property were completely contiguous with the city's boundaries—as were the boundaries of all other properties annexed under Ordinance No. 4339.[4] Thus, assuming for now the accuracy of that map, Bold's property corresponded, for analytic purposes, to the circumstances described in Figure 1.[5]

---

[4] As shown on the "annexation hearing map," Ordinance No. 4339 authorized the annexation of several scattered properties, each of which was completely, immediately contiguous to the city's boundaries.

[5] Both petitioners raise challenges to the accuracy of the "annexation hearing map," as well as to the propriety of prior annexations and acquisitions of allegedly "surrounding" properties and rights-of-way. We address those challenges below. *See* 206 Or App at 387-91.

The ordinances at issue went into effect in March 2005. Petitioners, in appeals that LUBA consolidated, raised myriad challenges to the annexations. Before LUBA, as on judicial review, petitioner Wells argued that its properties were not "surrounded by the corporate boundaries of the city" within the meaning of ORS 222.750.[6] In particular, Wells contended that, under ORS 222.750, the city was required to annex the entire "island" area, and not merely a portion of that area. The LUBA majority rejected that argument, concluding:

> "In order for the statute to apply, there must be territory not within the city that touches, or is adjacent to, the city boundaries or a body of water on all sides. However, the statute does not require, as petitioners assert, that the *property to be annexed* be adjacent to the city boundaries or a body of water on all sides."

*Costco Wholesale Corp. v. City of Beaverton*, 50 Or LUBA 476, 484-85 (2005) (emphasis in original);[7] *see also id.* at 501 (Holstun, concurring) ("[T]here is nothing in ORS 222.750 that prohibits a city from identifying a territory that qualifies for nonconsensual annexation under ORS 222.750 and then annexing a part of such a surrounded territory now and delaying annexation of the balance of that surrounded territory to a later date.").

Before LUBA, petitioners also raised two other arguments that they renew on judicial review. First, petitioners

_____

[6] Before LUBA, petitioner Bold acknowledged that Wells's argument—that, "in order to be 'surrounded' under ORS 222.750, the city boundary must be adjacent to the territory"—"is inapplicable to Ordinance No. 4339." However, Bold maintained that its property was not "surrounded" because city had failed to prove that the "surrounding" rights-of-way had been validly annexed.

[7] In so holding, LUBA quoted with approval its observation in *Kane v. City of Beaverton*, 49 Or LUBA 512, 528 (2005), that ORS 222.750 "clearly authorizes the city to annex the entire island, and nothing in the statute prohibits piece-meal annexation of the island[.]" The facts in *Kane*, as LUBA acknowledged, were "drastically different" from those presented here. *Costco Wholesale Corp.*, 50 Or LUBA at 484. In *Kane*, the city annexed only a portion of the "islanded" area but did so because one parcel fell partly outside the island. *Kane*, 49 Or LUBA at 515. We subsequently affirmed the city's decision. *See Kane v. City of Beaverton*, 202 Or App 431, 122 P3d 137 (2005) (noting that many of the petitioners' assignments of error had not been preserved and writing only to address, and reject, the petitioners' argument that ORS 222.750 "violates their constitutional rights under the Equal Protection Clause of the Fourteenth Amendment").

contended that the city had failed to establish that it had, in prior proceedings, properly annexed the rights-of-way that formed some of the outer perimeters around petitioners' properties, and, thus, the city had failed to establish, as a factual matter, that the properties were "surrounded" for purposes of ORS 222.750. Second, petitioners argued that, in all events, the annexations were "unreasonable" under the test set forth in *Portland Gen. Elec. Co. v. City of Estacada*, 194 Or 145, 146, 241 P2d 1129 (1952). LUBA rejected those arguments.

On judicial review, petitioners, individually or jointly, raise three arguments: (1) Regardless of the proper legal construction and application of ORS 222.750, LUBA erred in rejecting petitioners' argument that, as a factual matter, the city failed to establish that the properties were "surrounded" for purposes of ORS 222.750. That is, even if LUBA and the city were correct in their construction of ORS 222.750, the city failed to establish the factual prerequisites for annexation pursuant to that statute. (2) In all events, under the proper construction and application of ORS 222.750 with respect to petitioner Wells's property, that property is not "surrounded by the corporate boundaries of the city" and, thus, is not subject to annexation. (3) Even if otherwise permissible under ORS 222.750, the annexations authorized pursuant to Ordinance Nos. 4338 and 4339 were "unreasonable" under *Portland Gen. Elec. Co.*

■     We turn first to petitioners' factual arguments concerning the validity of the city's reliance on its rights-of-way around the affected properties as establishing the "corporate boundaries" of the city for purposes of ORS 222.750. Petitioners assert that the city failed to establish the validity of some of the predicate "encircling" annexations and, thus, failed to establish as a factual matter that petitioners' properties were "surrounded" under any reasonable construction of that term. If petitioners are correct, that would obviate any need to construe ORS 222.750.

LUBA rejected petitioners' arguments concerning the rights-of-way on the ground that petitioners could not collaterally attack the validity of prior annexations in the present proceeding. In so holding, LUBA concluded that "[t]he

annexations that largely encircle the annexation territory at issue in this appeal were accomplished by a series of ordinances for which the appeal period has long run." *Costco Wholesale Corp.*, 50 Or LUBA at 486 (internal quotation marks omitted).

On judicial review, petitioners assert that LUBA erred in so concluding, arguing that, under *Rivergate Residents Assn. v. Portland Metro Area*, 70 Or App 205, 689 P2d 326 (1984), *rev den*, 298 Or 553 (1985), their challenges to the prior annexations did not become ripe until the annexations at issue here occurred. The city responds that ORS 12.270 explicitly bars petitioners' collateral challenge under these circumstances. As explained below, we agree that ORS 12.270 is dispositive and that *Rivergate Residents Assn.* is not on point.

In *Rivergate Residents Assn.*, the petitioner sought review of a proposed voter-approved annexation that had the effect of surrounding the petitioner's property, which was excluded from the annexation. There, the petitioner argued that the annexation deliberately created an "island" in order to later subject the excluded property to summary annexation pursuant to ORS 222.750. The petitioner argued that the voter-approved annexation was "unreasonable and deprives the [petitioner's] members of their constitutional right to vote on annexation." 70 Or App at 207. The court turned first to the petitioner's constitutional right to vote argument:

> "Because petitioner has not shown that its members have been deprived of a constitutional right to vote on annexation of their property by the adoption of Proposal No. 1930, however, we need not decide whether the holding of *Thurber v. McMinnville*, [63 Or 410, 128 P 43 (1912)], or the current version of the initiative and referendum amendment (Article IV, section 1(5)) guarantees that right. Proposal No. 1930 was adopted pursuant to the so-called triple-majority annexation procedure outlined in ORS 199.490(2), which insulates it from a vote of the people in the territory to be annexed. ORS 199.495(1). Because petitioner's members' property was excluded from the annexation, it lacks the requisite 'injury in fact' to challenge the approved annexation. *See generally Ore. Newspaper Pub. v.*

*Peterson*, 244 Or 116, 121, 415 P2d 21 (1966). While the proposal adopted effectively creates an 'island' of petitioner's members' land, thereby arguably subjecting it to summary annexation pursuant to ORS 222.750, the city has not attempted to annex that property, and the challenged proposal acknowledges the members' desire to be excluded from the annexation. As the court stated in *Gortmaker v. Seaton*, 252 Or 440, 442, 450 P2d 547 (1969):

> " 'It is fundamental to appellate jurisprudence that courts do not sit 'to decide abstract, hypothetical, or contingent questions * * * or to decide any constitutional question in advance of the necessity for its decision * * *.' (Quoting *Federation of Labor v. McAdory*, 325 US 450, 461, 65 S Ct 1384, 89 L Ed 1725 (1945).)

> "*See also Granata v. Tanzer*, 31 Or App 21, 569 P2d 1090 (1977). When and if the city decides to annex the islanded property, the issue will be ripe for consideration."

*Rivergate Residents Assn.*, 70 Or App at 210-11 (footnotes omitted; some internal quotation marks omitted). The court then went on to consider the petitioner's challenge to the reasonableness of the annexation, *id.* at 211-13, and ultimately concluded that "the Commission's findings were adequate to support its conclusion that the boundary change was logical and should be approved." *Id.* at 213 (footnote omitted).

Petitioners assert that *Rivergate Residents Assn.* stands for the broad proposition that "a property owner's challenge to the basis of an island annexation is only ripe when the city decides to annex the islanded property." While isolated phrases in *Rivergate Residents Assn.* might appear to corroborate that broad proposition (*e.g.*, "[b]ecause petitioner's members' property was excluded from the annexation, it lacks the requisite 'injury in fact' to challenge the approved annexation"), the context of such statements makes it clear that we were not holding that *none* of the petitioner's arguments was justiciable. Rather, we held only that the petitioner's constitutional claim concerning deprivation of the right to vote on annexation of its properties was not yet ripe, because the city had not yet attempted to annex the petitioner's properties. Indeed, if we had, in fact, concluded that the petitioner in *Rivergate Residents Assn.* could not assert any type of challenge to the annexation, we would not

have considered the merits of the petitioner's "reasonable-ness" argument. That is, we would have dismissed the case as nonjusticiable, rather than affirming.

We thus conclude that *Rivergate Residents Assn.* stands for the following, much narrower, proposition than petitioners here posit: A constitutional claim concerning deprivation of the right to vote on an annexation does not ripen until the annexation to which the voting right is alleged to have attached occurs.[8] In sum, neither the reasoning nor the holding of *Rivergate Residents Assn.* precluded petitioners, on "unripeness" grounds, from raising their present challenges to the "encircling" annexations as those annexations occurred.

Rather, as the city suggests, petitioners were required under ORS 12.270 to raise any such challenge within a year of the effective date of the right-of-way annexations that they now collaterally attack. ORS 12.270 provides, in part:

> "On September 13, 1975, any proceeding that establishes or alters the boundaries of a governmental subdivision previously or hereinafter initiated and purported to be effected in accordance with applicable legal requirements shall be *conclusively presumed valid for all purposes one year after the purported effective date of the action. No direct or collateral attack on the action may thereafter be commenced.*"

(Emphasis added.) That statute goes on to provide a nonexclusive list of types of proceedings to which it applies, including various boundary changes, incorporations, annexations, withdrawals and transfers of territories, and mergers. ORS 12.270(2)-(15).

Here, it appears that each of the city's prior annexations of rights-of-way that petitioners now challenge became effective more than one year before petitioners first asserted

---

[8] In fact, given subsequent case law determining that there is no constitutional right to be allowed to vote on municipal annexations, that holding is of little present significance. *See Mid-County Future Alternatives v. City of Portland*, 310 Or 152, 795 P2d 541, *cert den*, 498 US 999 (1990); *see also Kane*, 202 Or App at 434-39 (rejecting constitutional voting rights argument concerning the same annexations at issue in the present case).

their present collateral attacks. Accordingly, ORS 12.270 bars those challenges.

■ We proceed, then, to petitioner Wells's legal argument regarding the proper construction and application of ORS 222.750 to the annexation of its property. Again, that statute, as pertinent here, permits annexation without voter approval "[w]hen territory not within a city is surrounded by the corporate boundaries of the city[.]" When such an event occurs, then "it is within the power and authority of that city to annex such territory." ORS 222.750.

Petitioner Wells's argument is straightforward: Its properties are not "surrounded by" the corporate boundaries of the city because its properties are contiguous on one side to Nike headquarters, which is not within the corporate boundaries of the city. The city responds that, because the Wells properties and the Nike properties together are surrounded by the corporate boundaries of the city, any part of the surrounded territory may be annexed pursuant to ORS 222.750. That is, the city takes the position that, when territory is "islanded," the city is not required to annex the entire "island," but may annex only part of it, leaving a smaller "island" of unincorporated land.

We construe ORS 222.750 by applying the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that methodology, we first consider the text of the statute in context, along with "first-level" maxims of statutory construction. *Id.* at 611. If, after we engage in that inquiry, the statute remains ambiguous, we look to the statute's legislative history, *id.* at 611-12, and, finally, if "the intent of the legislature remains unclear," then the court resorts to certain "third-level" maxims of statutory construction. *Id.* at 612. The object of our inquiry is, of course, to discern and enforce the intent of the legislature. *Id.* at 610.

We note, at the outset, that, given the structure of ORS 222.750, the "territory" that the city is authorized to annex ("*such* territory") is, necessarily, the *same* "territory" described in the statute's introductory phrase, "[w]hen territory not within a city is surrounded by the corporate boundaries of the city[.]" *See generally State v. Stamper*, 197 Or App

413, 418, 106 P3d 172 (2005) ("[I]n the absence of evidence to the contrary, it is safe for us to assume that the legislature employs the same terms consistently throughout related statutes."). That is, the area "surrounded by the corporate boundaries of the city" and the area to be annexed must be *congruent*.

The statute's requirement of congruency is critical. It defines, and drives, the determination of what territory is subject to annexation pursuant to ORS 222.750. At the most practical level—and referring again to our initial illustration, *see* 206 Or App at 384—if an area ("A") is "surrounded by the corporate boundaries of the city," the city is authorized to annex that *entire* area. In that circumstance, the congruency requirement is satisfied. If, however, the city seeks to annex only a part of "A"—*viz.*, property "B" lying within "A," *see, e.g., id.* Figures 2 and 3—the congruency requirement can be satisfied only if "B" *itself* is *"surrounded* by the corporate boundaries of the city" within the meaning of ORS 222.750.

The question narrows, then, to the proper construction of the term *"surrounded* by the corporate boundaries of the city." Specifically, notwithstanding that Wells's property lies within a larger area that is encompassed by the city,[9] is Wells's property "surrounded" by the city, even though the city boundaries are not contiguous with all sides of Wells's property?

Neither ORS 222.750 nor any other statute defines "surrounded" or "surround." The original antecedent of ORS 222.750, which included the "surrounded by" language, was enacted in 1919. *See* Or Laws 1919, ch 6. Roughly contemporaneous dictionaries yield the following pertinent definitions of "surround":

> "To enclose, encompass, or beset on all sides * * * to have on all sides or all round.
>
> "* * * * *

---

[9] We necessarily so assume, given our determination that Wells's collateral attacks on the predicate "encircling" annexations are precluded by ORS 12.270. *See* 206 Or App at 390-91.

"To go or extend round (an object or body, a room, or the like) ; to encircle, as a frame, border, etc."

*The Oxford English Dictionary* 246 (1933). The same source defines "encircle" as "[t]o enclose in a circle[,]" *id.* at 146; "enclose" as "[t]o surround, bound on all sides ; to envelop, contain[,]" *id.* at 147; and "encompass" as, variously, "[t]o encircle as a ring or girdle ; to surround, bound on all sides" and "[t]o surround entirely, overlay as with an envelope or shell ; to contain." *Id.* at 148.[10]

Those definitions, while instructive of plain meaning, are not ultimately conclusive, even when placed in statutory context. The difficulty lies not in definition but, instead, in nuance.

Consider, for example, the island of Oahu and the city of Honolulu, located on that island. Oahu is, of course, "surrounded by" the Pacific Ocean—but is Honolulu? On one hand, the ocean is not contiguous to all sides of the city; on the other hand, a person walking in any direction from the city center will, eventually, come to the ocean. Still, in common usage, Honolulu is almost certainly not "surrounded by" the Pacific.[11] Conversely, however, it would comport with common usage to say that the Earth is "surrounded by" the ozone layer—notwithstanding that the ozone layer is not contiguous to the planet's surface. That is, the ozone layer encloses or envelops the Earth, albeit at a remove.

Here, Wells's property is "surrounded by" the city in one sense, but not in the other. A person traveling in any direction from Wells's property will, eventually, cross "the

---

[10] Those definitions comport with usage from both over a century earlier and nearly 80 years later. *See, e.g.*, Noah Webster, *An American Dictionary of the English Language* 86 (1828) (defining "surround" as "[t]o encompass ; to environ ; to inclose on all sides ; as, to *surround* a city * * * [t]o lie or be on all sides of ; as, a wall *or ditch surrounds* the city" (emphasis in original)); *Webster's Third New Int'l Dictionary* 2283 (unabridged ed 2002) (defining "surround" as, *inter alia*, "to be situated or found around, about, or in a ring around * * * to form a ring around : extend around or about the edge of : constitute a curving or circular boundary for : lie adjacent to all around or in most directions * * * to occur or to be next, near, adjacent to").

[11] A more extreme example would be Australia, and the city of Alice Springs, located near the geographic center of the continent. Although Australia is "surrounded by" the sea, could the same, plausibly, be said of Alice Springs?

corporate boundaries of the city." However, the city's boundaries are not contiguous with all sides of Wells's property. In sum, resort to "plain meaning," while provocative, is inconclusive.

When interpreting text in context, we also may consider the historical evolution of a statute. *Oregonians for Sound Economic Policy v. SAIF*, 187 Or App 621, 635, 69 P3d 742, *rev den*, 336 Or 60 (2003). As noted, the statute originally was enacted in 1919. It provided:

> "In any case where land or territory is surrounded by the corporate limits or boundaries of any city it shall be within the power and authority of such city to amend its charter so as to annex such land or territory to the city and to incorporate the same within the city with or without the consent of any owner of property within the territory and with or without the consent of any resident in the territory, provided that the territory is not an incorporated city or wholly territory belonging to the state or Federal Government."

Or Laws 1919, ch 6.

In 1963, the statute was amended to read:

> "In any case where land or territory is surrounded by the corporate limits or boundaries of any city, it is within the power and authority of that city to annex such land or territory, provided it is not an incorporated city. Unless otherwise required by its charter, annexation by a city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident in the territory."

Or Laws 1963, ch 444, § 1. Nothing in the 1963 enactment sheds light on how the legislature intended "surrounded by" to be interpreted. Nor did the changes in the statute suggest that the legislature intended to alter in any way the scope of the statute insofar as it defines what territory is eligible for annexation.

In 1985, however, the legislature did amend ORS 222.750 in a manner that redefined what territory can be annexed under the statute:

"[*In any case where land or*] **When** territory **not within a city** is surrounded by the corporate [*limits or*] boundaries of [*any*] **the** city, **or by the corporate boundaries of the city and the ocean shore or a stream, bay, lake or other body of water**, it is within the power and authority of that city to annex such [*land or*] territory[, *provided it is not an incorporated city*]. **However, this section does not apply when the territory not within a city is surrounded entirely by water**. Unless otherwise required by its charter, annexation by a city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident of the territory."

Or Laws 1985, ch 702, § 16 (italics and brackets show deleted language; boldface shows added language).

Those textual changes suggest that the legislature intended to expand the definition of what territory was eligible for annexation under the statute—that is, under prior versions, regardless of which way "surrounded by" was read, a city's corporate boundaries would need to enclose the annexed territory on all sides. Under the 1985 version, a city's corporate boundaries would not need to enclose all sides of annexed territories, so long as any part of the annexed territory not "surrounded by" the city was "surrounded by" a combination of the city's corporate boundaries and "the ocean shore or a stream, bay, lake or other body of water[.]" The second addition to the statute, however, indicates that the statute does *not* apply when a territory is "surrounded entirely by water"—possibly suggesting that the city must, at least at some point, actually touch the annexed territory. Still, that conclusion does not answer the question whether, in situations that do not involve bodies of water, the territory to be annexed must be completely contiguous to the city.

While the context of the 1985 changes that altered the scope of ORS 222.750 is interesting, it provides no definitive indication of legislative intent. That is, the text read in context does not reveal definitively whether the legislature intended "surrounded by" as used in ORS 222.750 to require a territory to be annexed to be completely contiguous to and enclosed by the corporate boundaries of a city.

Because the text in context is ambiguous, we turn to the legislative history of ORS 222.750. *PGE*, 317 Or at 610-12. Although the words "surrounded by" have been in the statute since it was enacted in 1919, it is the intent of the 1985 legislature that enacted the current version of the statute that is pertinent here, because the version of the statute as enacted in 1985 altered the reach of the statute regarding what territory is eligible for annexation. *Cf. Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (where context makes it clear that the scope of a statute has been altered, court's interpretation must focus on the current statute regardless of the court's interpretations of earlier versions).

House Bill 2906, sponsored by Representatives Larry Hill and Fred Parkinson at the request of the League of Oregon Cities, made numerous alterations to laws concerning cities, including their abilities to annex new territory. As pertinent to the question before us, two sections of HB 2906 are of interest. As originally proposed, the amendment to the "island annexation" statute, ORS 222.750, did not contain the sentence pertaining to "true" water-surrounded islands: It merely proposed to expand the reach of the statute from "surrounded by the corporate limits or boundaries of any city" to allow the territory also to be surrounded by "a stream, bay, lake or other body of water." Original Bill File, LC 1297, HB 2906 (1985). HB 2906 also, however, proposed a change to ORS 222.111, which contains a more general description of properties subject to annexation by cities under a variety of circumstances. Prior to the 1985 changes, ORS 222.111(1) provided, in pertinent part, that "the boundaries of any city may be extended by the annexation of territory not within a city and which territory is contiguous to the city or separated from it by a stream only." HB 2906 altered that language to provide that "the boundaries of any city may be extended by the annexation of territory that is not within a city and that is contiguous to the city or separated from it only by a public right of way or a stream, bay, lake or other body of water." Original Bill File, LC 1297, HB 2906 (1985). Thus, there are apparent parallels between the proposed amendments to ORS 222.111 and ORS 222.750.

The bill was referred to the House Committee on Intergovernmental Affairs, which was chaired by Representative Hill, and the first hearing was held on the bill on April 2, 1985. At that hearing, Fred Neal, on behalf of the League of Oregon Cities, explained the purposes of the bill. Minutes, House Committee on Intergovernmental Affairs, HB 2906, Apr 30, 1985. As pertinent here, the League of Oregon Cities described the bill as "clarify[ing] that lands are contiguous to cities if separated only by any body of water (not just streams) or by public roads," and "that 'islands' for purposes of annexation without a vote can be created by any body of water (not just streams)." Minutes, House Committee on Intergovernmental Affairs, HB 2906, Apr 30, 1985, Exhibit B (written submission presented by Fred Neal on behalf of League of Oregon Cities).

However, another witness, William Abel, did not view the amendments as mere "clarifications" of the law, but as an expansion. *Id.*; *see also* Exhibit C (written submission presented by William Abel). He described the proposed amendment to ORS 222.750 as "allow[ing] the annexation of areas that are merely *contiguous* to the boundaries of a city. The annexation of contiguous areas is well covered by Oregon law and requires the consent of the electors[.]" *Id.* (emphasis added). The witnesses and the legislators discussed at length the various situations in which ORS 222.750 might be applied and, although the details of their various hypotheticals need not be set forth here, suffice it to say that none of the scenarios described in committee, either in support of or in opposition to the bill, suggested that the statute would allow a city to reach into a surrounded territory (regardless of whether surrounded by a city alone or by a city and bodies of water) and annex only part of it.

In response to concerns expressed in the work sessions on the bill, Chairman Hill proposed an amendment on April 30, 1985. That amendment added the following qualification: "However, this section does not apply when the territory not within a city is surrounded entirely by water." HB 2906 § 16 (A-Engrossed). In a work session held on that date, Chairman Hill explained the amendment as follows:

> "The purpose for this is—is, uhm, *an island is one that's contiguous*. And, uh, we did define as contiguous lands that are across water for purposes of annexation, but we didn't mean that to apply to islands across water. * * * Remember, an island annexation does not require triple majority or the other safeguards. It's simply an act by the governing body, and we don't want to extend that to, for instance, Hayden Island."

Tape Recording, House Committee on Intergovernmental Affairs, HB 2906, Apr 30, 1985, Tape 177 (statement of Chairman Hill) (emphasis added). We understand Chairman Hill's first reference to "an island" to be to a landlocked unincorporated territory surrounded by a city, which is what the "island annexation" statute, ORS 222.750, had concerned before the proposed 1985 legislative changes. His second reference, however, is to "islands across water," which were not intended to be covered by the proposed 1985 legislative changes. Thus, it appears that the legislator who introduced the 1985 changes that established the current scope of the statute understood the "surrounded by" language in ORS 222.750 to mean "surrounded by" in the "contiguous" sense.

Although isolated statements of a witness and a legislator in public hearings and work sessions might not necessarily be considered the most definitive evidence of the intent of an entire legislature, we find that, under these circumstances, that the legislative history quoted above reveals sufficiently the legislative intent here. That is so for at least two reasons. First, the understanding that "surrounded by" was meant in the "contiguous" sense was shared both by Abel, an opponent of the bill, and Chairman Hill, a sponsor of the bill. Second, nothing else in the legislative history contradicts that understanding. We thus conclude that the legislature, in enacting the current version of ORS 222.750, intended "surrounded by" to mean that the territory to be annexed must be completely enclosed by and contiguous with the corporate boundaries of the annexing city or the corporate boundaries of the annexing city and a body of water.

Given that construction, the city lacked authority to annex Wells's property under ORS 222.750. LUBA erred in concluding otherwise.

We turn, finally, to petitioners' remaining assignment of error, challenging the "reasonableness" of the annexation under the criteria described in *Portland Gen. Elec. Co.* Given our determination that the annexation of Wells's property was not authorized under ORS 222.750, we consider only Bold's "reasonableness" arguments. We reject those arguments without discussion.

Reversed and remanded as to petitioner Wells; affirmed as to petitioner Bold.