Argued and submitted March 5, decision of Court of Appeals affirmed;
order of Land Use Board of Appeals reversed, and case remanded to
Land Use Board of Appeals for further proceedings June 7, 2007

## COSTCO WHOLESALE CORPORATION,
*Petitioner,*

*and*

## Henry KANE,
*Intervenor-Petitioner,*

*v.*

## CITY OF BEAVERTON,
*Respondent.*

(LUBA No. 2005-044)

## WELLS REAL ESTATE FUNDS, INC.,
*Respondent on Review,*

*v.*

## CITY OF BEAVERTON,
*Petitioner on Review.*

(LUBA No. 2005-046)

## BOLD, LLC,
*Petitioner,*

*and*

## Henry KANE,
*Intervenor-Petitioner,*

*v.*

## CITY OF BEAVERTON,
*Respondent.*

(LUBA No. 2005-050)

## C.E. JOHN COMPANY, INC.
*Petitioner,*

*and*

## Henry KANE,
*Intervenor-Petitioner,*

*v.*

## CITY OF BEAVERTON,
*Respondent.*

(LUBA No. 2005-053)

(CA A130488; SC S53777)

161 P3d 926

Alan Andrew Rappleyea, of Beaverton City Attorney's Office, Beaverton, argued the cause and filed the brief for petitioner on review. With him on the brief was William J. Scheiderich.

Jack L. Orchard, of Ball Janik LLP, Portland, argued the cause and filed the response and brief for respondent on review. With him on the response and brief was Dana L. Krawczuk.

Thomas Sponsler, of Beery, Elsner & Hammond LLP, Portland, filed the brief for *amicus curiae* League of Oregon Cities.

WALTERS, J.

Gillette, J., dissented and filed an opinion in which De Muniz, C. J., joined.

**WALTERS, J.**

Under state statute, a city may annex property that is contiguous to the city by obtaining either the consent or majority vote of the owners of the property to be annexed. A city may annex property without such approval if the city boundaries "surround" the property to be annexed, a form of annexation referred to as an island annexation. In this case we decide whether a city may annex only part of an island that it surrounds without the consent or majority vote of the owners.

The territory that gives rise to the dispute in this case is made up of property owned by Wells Real Estate Funds, Inc. (Wells), respondent on review in this court, and Nike, Inc. (Nike).[1] The City of Beaverton (city) extended its boundaries and encircled that territory so that its boundaries were contiguous to the territory on all sides. It is undisputed that that territory thus became an island, within the meaning of the island annexation statute, and that Oregon law authorizes the city to annex that territory in its entirety without the approval of the owners of property in the territory.

In 2004, the city adopted a resolution announcing a policy to annex all adjacent urban unincorporated areas "over time" and directing the mayor to annex the territory at issue in its entirety, including both the property owned by Wells and the property owned by Nike. In 2005, however, the city excluded from further annexation proceedings all property owned or leased by Nike.[2] As a result, although the city boundaries continued to form a ring around the territory as a whole, and although the Wells property was located within that ring, the city boundaries were no longer entirely contiguous to the property then to be annexed, the Wells property,

---

[1] The territory also included property owned by Costco Wholesale Corporation (Costco).

[2] The annexation ordinance that the city adopted included the Costco property. Costco challenged the annexation at a city hearing and by appeal to the Land Use Board of Appeals, but then declined to seek further review.

on all sides. The Nike property stood between the city boundary and the Wells property on one side. The city nevertheless asserted that it could annex the Wells property:

> "The subject properties are within islands defined by the City's corporate limits. Some of the properties that are the subject of this proposed annexation constitute only part of an island. The statutory provision cited above [ORS 222.750] does not require annexation of an entire island."[3]

Wells appealed the annexation of its property to the Land Use Board of Appeals (LUBA). After LUBA affirmed the city's annexation of the Wells property, Wells sought judicial review in the Court of Appeals. The Court of Appeals reversed, concluding that, under the applicable statute, ORS 222.750, "the territory to be annexed must be completely enclosed by and contiguous with the corporate boundaries of the annexing city or the corporate boundaries of the annexing city and a body of water." *Costco Wholesale Corp. v. City of Beaverton*, 206 Or App 380, 398, 136 P3d 1219 (2006). We granted the city's petition for review.[4]

We begin our review with the text of ORS 222.750, which authorizes island annexation of territory "surrounded by" city boundaries:

> "*When territory not within a city is surrounded by the corporate boundaries of the city*, or by the corporate boundaries of the city and the ocean shore or a stream, bay, lake or other body of water, *it is within the power and authority of that city to annex such territory*. However, this section does not apply when the territory not within a city is surrounded entirely by water. Unless otherwise required by its charter,

---

[3] The city used the plural "islands" because the city also annexed other property in other islands. None of those properties is involved in this proceeding.

[4] There has been subsequent legislation related to this dispute, but we are satisfied that the legislation has not rendered the dispute moot. On March 1, 2005, the city annexed the territory at issue. That was a final appealable decision. *See* ORS 197.825(1) (LUBA jurisdiction); ORS 197.015(11)(a)(A) (defining land use decision). The Oregon legislature then enacted legislation, which became effective on September 2, 2005, providing that "the City of Beaverton may not annex territory in any manner that does not require the city to obtain approval of the residents of or the property owners in the territory." Or Laws 2005, ch 844, § 1. The legislature provided that the act became effective upon its passage and did not provide that that section was retroactive. *Id.* at § 12. The ban will lapse January 2, 2008. *Id.* at § 10.

annexation by a city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident in the territory."

(Emphases added.)

As shown in the figure below, the territory consisting of the Wells property and the Nike property is indisputably "surrounded by" the city boundaries.

The city agrees that, as a prerequisite to the exercise of its statutory island annexation authority, its boundaries must contiguously and completely encircle the territory in question and create such an island. The city argues, however, that, once its boundaries surround and create such an island, it is entitled to annex all or any part of that island. The city contends that, because the Wells property is within the circle of its boundaries, it too is "surrounded by" city boundaries. The city contends that the only contiguity that is required is the partial contiguity of the city territory and the Wells property that is represented by the solid line shown on the figure above. Wells responds that ORS 222.750 allows only annexation of territory that is completely and contiguously surrounded by city boundaries and that, when the city eliminated the Nike property from its annexation plans, the city boundaries no longer surrounded the territory to be annexed in the manner required by the island annexation statute. The issue presented is whether a city has authority to engage in island annexation pursuant to ORS 222.750 if city boundaries do not completely and contiguously encircle the property to be annexed.

We first consider the words "surrounded by," as used in ORS 222.750, and consult the dictionary. The word "surround" means to be situated or found around, about, or in a ring around. *See Webster's Third New Int'l Dictionary* 2302 (unabridged ed 2002) (providing definitions). The senses in which that word can be used are many. Some suggest a requirement of close proximity, if not contiguity. Others seem to permit more distance. "[T]o throng, press, or cluster around," as "[the] crowd throng[ed] the victor" implies immediacy, as do "to envelop in or as if in a cloud or mist," or "to encase or cover like pulp around a core." *Id.* "[T]o live around on all or most sides," "to form or be in the retinue [or] entourage," or "to be present around, about, or near" all imply a greater range. *Id.* Because ORS 222.750 uses "surround" in conjunction with "boundaries," the sense that most aptly fits our purpose is "to form a ring around: extend around or about the edge of: constitute a curving or circular boundary for: lie adjacent to all around or in most directions." *Id.*

Using that sense of the word "surround" and applying it to the figure shown above, it is clear that the city boundaries "surround" the territory made up of both the Wells and Nike properties. The city boundaries form a ring around that territory, extend around the edge of it, constitute a circular boundary for it, and lie adjacent to it all around. As a prerequisite to annexation under ORS 222.750, the corporate boundaries of the city necessarily must surround territory in such a completely encircling and contiguous fashion or no island would be formed in the first instance.

■ The city points to the part of the dictionary definition that provides, "[to] lie adjacent to all around *or in most directions*" (emphasis added). It contends that, once the island is formed and city boundaries "surround" a territory completely and contiguously, they also "surround" any part of that territory, even though they lie adjacent to that part only "in most directions." To accept that argument, we would be required to give the term "surround" as used in ORS 222.750 two different meanings: (1) to create an island, city boundaries must lie adjacent to territory all around it; and (2) to annex part of an island, city boundaries need lie adjacent to territory only "in most directions." The words "surrounded by" cannot have both meanings, because those words

describe and limit the conditions that allow the exercise of authority. If "surrounded by" means adjacent "in most directions," then ORS 222.750 would impose no requirement that city boundaries completely and contiguously encircle the territory to create an island in the first instance. We conclude that, in requiring that territory be "surrounded by" city boundaries, the legislature required that city boundaries encircle the territory completely and contiguously.

■        That conclusion does not, however, completely answer the city's argument. The city contends that, because the legislature has conferred upon the city the power to annex the whole island, the legislature also has conferred the power to annex a part of that whole. To respond, we consider the part of the statute beginning after the words "surrounded by." ORS 222.750 provides that, when "territory" is surrounded by city boundaries, the city may annex "such territory." "Such" refers to something previously mentioned and indicates that it is the identical thing. *See Webster's* at 2283 (defining "such," in part, as "previously characterized or specified: AFOREMENTIONED"). The most straightforward reading of the statute, and the interpretation that we adopt, is that the territory that is encircled, completely and contiguously, to form the island in the first instance, is the territory that may be annexed—no more and, also, no less.

■■        In reaching that conclusion, we consider not only the text of ORS 222.750 but also the statutory and historical context in which it fits. People who purchase property make a choice to attain the benefits, and subject themselves to the burdens, of property ownership, some of which are determined by the location of their property within or without city limits. Cities have the power to confer benefits on those who own property within their boundaries, providing them with services such as police protection. Cities also have the power to obligate those who own property within their boundaries to shoulder municipal burdens, such as payment of taxes. Oregon cities do not have inherent, home rule authority to impose those same obligations on those outside their borders. *Mid-County Future Alternatives v. City of Portland*, 310 Or 152, 161, 795 P2d 541 (1990). And cities do not have inherent, home-rule authority to extend their borders to annex unwilling property owners and make them subject to municipal

obligations. *Landess v. City of Cottage Grove*, 64 Or 155, 156-57, 129 P 537 (1913), *abrogated on other grounds by Mid-County*, 310 Or at 166; *Thurber v. McMinnville*, 63 Or 410, 414-16, 128 P 43 (1912), *abrogated on other grounds by State ex rel Heinig v. Milwaukie*, 231 Or 473, 373 P2d 680 (1962); *State ex rel v. Port of Tillamook*, 62 Or 332, 342-43, 124 P 637 (1912). In *Thurber*, the court found it repugnant to its ideas of fairness and justice that "an enterprising municipal corporation" could subject those outside the city to the burdens of municipal taxation "without their consent and against their will." *Id.* at 414.

■ That does not mean that cities cannot expand without the consent of property owners who have chosen to live outside their confines. Cities can extend their boundaries without the consent of the affected property owners and against their will if state legislation grants them the authority to do so. *Mid-County*, 310 Or at 161-64. But, in considering the scope of that authority, we are cognizant that the degree to which the legislature permits a city to act unilaterally is the same degree to which the legislature deprives a property owner of the ability to choose municipal affiliation, its benefits, and burdens.

When the state legislature first enacted a statute permitting cities to extend their borders in 1893, the legislature required that a majority of voters in the city and that a majority of voters in the territory to be annexed vote separately in favor of annexation. Or Laws 1893, p 120, § 4, *codified as* Lord's Oregon Laws, title XXVI, ch I, § 3209 (1910). The legislature has maintained the requirement of consent or election in the territory to be annexed to this day, except in two special circumstances. *See* ORS 222.111(5) (indicating exceptions to election requirement). The legislature has dispensed with the consent or election requirements for island annexation and for territory posing a health hazard. ORS 222.750 (*originally enacted as* Or Laws 1919, ch 6, § 1); ORS 222.840 - 222.915 (*originally enacted as* Or Laws 1967, ch 624). For health hazard annexation, the legislature expressly permits cities to annex only part of a territory otherwise subject to forcible annexation, provided that cities follow and

meet specified procedures and standards. ORS 222.880.[5] The legislature has not expressly granted cities similar power to engage in partial island annexation.[6]

We conclude from our examination of the text of ORS 222.750, the statutory scheme in which it is embedded, and, relatedly, its historical roots, that the legislature has granted cities the right to annex property beyond its borders in only particular, limited circumstances. Because ORS 222.750 does not explicitly authorize annexation of part of an island that is not itself surrounded, completely and contiguously, by city boundaries, we hold that that statute does not authorize annexation of the Wells property.

As a slight variation on the argument that, once an island is contiguously and completely surrounded, a city may annex all or part of that island, the city and *amicus* League of Oregon Cities argue that, even if cities eventually must annex an island in its entirety, no statute prohibits them from proceeding to that end in incremental steps. The answer to that argument is the same as the answer to the partial annexation argument: While no statute expressly prohibits partial or incremental island annexation, the legislature's use of the term "such territory" requires that the territory that forms the island be the territory that is annexed.[7]

---

[5] ORS 222.880(3) provides, in part:

"If the director [Director of Human Services] determines that a danger to public health exists because of conditions within only part of the affected territory, the director may, upon petition and hearing, reduce the boundaries of the affected territory to that part of the territory that presents a danger if the area to be excluded would not be surrounded by the affected territory remaining to be annexed and would not be directly served by the sanitary, water or other facilities necessary to remove or alleviate the danger to public health existing within the affected territory remaining to be annexed."

[6] The other manner in which cities can accomplish annexation is by majority consent or vote in the area to be annexed. When cities use those processes, they describe the area to be annexed and determine whether a majority in the area described consent or vote in favor. It is anticipated that the city will annex the described territory as a whole. *See* ORS 222.125 - 222.175 (setting procedure for consent or election including setting final boundaries of territory to be annexed); *see also Portland Gen. Elec. Co. v. City of Estacada*, 194 Or 145, 166, 241 P2d 1129 (1952) (proposed annexation void as to any part is void as to whole).

[7] The annexation ordinance at issue here does not reflect an intent to engage in incremental annexation. Moreover, after the city adopted that ordinance, the legislature passed an act that, according to the parties, effectively prohibits annexation of the Nike properties without the owner's consent for up to 35 years. *See* Or

■ *Amicus* also expresses its concern that a decision affirming the Court of Appeals will undermine the annexation authority of home rule cities. We note first that it is legislative, and not home rule, authority that a city exercises when it acts extraterritorially. *See Mid-County*, 310 Or at 161-64 (explaining difference). In granting that authority, the legislature generally requires majority approval of the affected landowners. A city that seeks to annex property that it does not surround, no matter how great the need or how good the reason, must obtain that approval. Even if the authority to engage in island annexation does not permit partial island annexation, that authority gives cities significant power to annex without obtaining the consent of the affected landowners. Cities that wish to annex only a part of an island are not prohibited from doing so. Instead, they are simply required to meet the standard necessary for nonisland annexation. If Oregon cities maintain that they should have greater authority to act outside their boundaries without the approval of the affected property owners, they can and should appeal to the legislature for that express authority.

The decision of the Court of Appeals is affirmed. The order of the Land Use Board of Appeals is reversed, and the case is remanded to the Land Use Board of Appeals for further proceedings.

**GILLETTE, J.,** dissenting.

The work of cities in the environment created by Ballot Measures 5 (1990) and 50 (1997) is difficult enough, without this court making it worse. In this case, unfortunately, that is what the majority does, by misreading a statute vital to the operation of cities in the present day.

That statute is ORS 222.750. I repeat the pertinent parts of it here to facilitate the discussion:

> "*When territory not within a city is surrounded by the corporate boundaries of the city,* * * * *it is within the power and authority of that city to annex such territory.* * * * Unless otherwise required by its charter, annexation by a

---

Laws 2005, ch 844, §§ 5, 11 (certain defined properties can be annexed only by consent; provision will lapse as late as 2040 depending on further legislative amendments).

city under this section shall be by ordinance or resolution subject to referendum, with or without the consent of any owner of property within the territory or resident in the territory."

(Emphasis added.) Respecting that statute, the majority quite rightly states, "The issue presented is whether a city has authority to engage in island annexation pursuant to ORS 222.750 if city boundaries do not completely and contiguously encircle the property to be annexed." 343 Or at 23. The majority then answers the question in the affirmative.

Let us at this point be clear about the majority's requirement of complete contiguity. When an "island" consists of two or more parcels in separate ownership, a city ordinarily will be completely contiguous to the parcels collectively, but not with any single parcel in its entirety. The consequence of reading a "complete contiguity" requirement into ORS 220.750 is that, if a city decides for any reason that it does not wish to annex each and every parcel within an island all at once, the city lacks the authority to annex *any* of the parcels.

For the life of me, I cannot understand how such a reading of the statute could persuade anyone, much less the majority. To begin with, as the majority appears to acknowledge in its review of various definitions of the word, 343 Or at 24, that the word "surround" is ambiguous. Furthermore, even the definition the majority chooses to use, *viz.*, "to form a ring around: extend around or about the edge of: constitute a curving or circular boundary for: lie adjacent to all around *or in most directions*," *id.* (emphasis added), does not itself require complete contiguity. Finally, the majority's efforts at injecting a complete contiguity requirement into that definition are weak at best. In that regard, the majority contends that requiring anything *less* than complete contiguity would give the term "surround," as used in ORS 222.750, two different meanings. 343 Or at 24. The majority begins by *assuming* that an island territory must be completely surrounded by and completely contiguous to a city's boundary. It then points to the city's definition of an island territory as one that is

completely surrounded by but *not* necessarily completely contiguous to a city's boundaries. The majority then offers a single sentence that purports to explain why the latter meaning is impossible: "If 'surrounded by' means adjacent 'in most directions,' then ORS 222.750 would impose no requirement that city boundaries completely and contiguously encircle the territory to create an island in the first instance." 343 Or at 25.

For some reason, the majority fails to recognize the circularity in the foregoing discussion. The majority *begins* by positing the correctness of the very definition that it seeks to uphold. It is no wonder that it can conclude that that narrow definition is the correct one. But the fact is that nothing in the wording of the statute requires complete contiguity. Moreover, the city's broader definition of the term "surround" would cover both kinds of islands that the majority opinion illustrates.

The majority itself appears to recognize that its point respecting the wording of the statute cannot be dispositive, because it spends four further pages arguing history. But, if the statutory wording were as dispositive as the majority suggests, why does it need further discussion? The truth is that neither the wording of the statute, nor the specific wording of any other statutes, answers the issue before us. We are left to logic and good sense respecting the scope of authority that the legislature intended to grant to cities under ORS 222.750. For me, that inquiry need not take long.

Even a casual glance at the Oregon Revised Statutes reveals the importance of cities in the scheme of Oregon governance. Laws relating to their organization and activities take up six full chapters—ORS chapter 221 to chapter 227. Cities are the political bodies that deliver the urban services that make it possible for citizens to live together: They provide public safety services (police and fire protection), public health services (water and sewer services), recreation and leisure opportunities (parks, trails, and nature reserves), and organizational control over the infrastructure within their boundaries (traffic controls, parking restrictions, zoning and other land use restrictions). To support those services (and a thousand others, many peculiar to a particular city or cities),

cities rely on property taxes. Those taxes are levied on property within the boundaries of the city. Often, there will be "islands" within the city that have not come within the city for any number of reasons. Some of the reasons may be political: For example, a city may make it a policy not to annex parcels where the resistance is very strong, partly on the theory that persons so forced into a city usually contribute nothing positive to the life of that city. Some of the reasons may be practical: A city may find something about the property in question that makes the property undesirable, such as a surface water runoff problem that would cost the city more to remedy than the city ever would receive in offsetting tax revenues. Or the city simply may determine that it lacks the ability to supply urban services to an island parcel at a particular time, so it chooses not to exercise its authority for the time being.

As one can see, each of the foregoing, completely legitimate considerations need not apply to a complete "island." It may be true, to take just one example, that one half of an island consists of rugged terrain with significant surface water runoff problems, while the other half of the "island" consists of an area ideal for home sites, all the more so because the city's population has been expanding in that direction and the city recently has constructed large improvements in the water and sewer system serving the area. Annexation of the latter half would be helpful to the city through added revenues to at least partially offset the new urban services now available to that parcel; annexation of the other part of the island would be detrimental to the city. Yet, today, the majority announces that *the legislature intended* not to permit a city to make exactly the kind of commonsense governmental decision that my hypothetical describes. I don't believe that, and I cannot understand why the majority, given a choice of answers, chooses to.[1]

The point in all this is that the exercise of the authority to annex is a classically political choice, influenced

---

[1] An even more charming example would involve an island consisting in part of property of the United States, which the city *could not* annex. According to the majority, the legislature intended any such island to be permanent, as long as a private owner within it desired to keep it that way.

by any number of considerations. And it is precisely that sort of authority that the legislature was addressing when it enacted ORS 222.750 to assist cities in doing their work. The question then should occur to us: In that context, and even allowing for the fact that the pivotal word is undefined, why should we adopt a definition that hamstrings cities in doing what they are supposed to do? Put that way, the answer is obvious.

I respectfully dissent.

De Muniz, C. J., joins in this dissenting opinion.